VELCO, demandante y recurrente, *v.* INDUSTRIAL SERVICE
APPAREL y OTROS, demandados; ASSOCIATES RELOCATION MA-
NAGEMENT, INC., interventor y recurrido.

*Número:* AC-96-16    *Resuelto:* 22 de mayo de 1997

244

*Federico Delgado Torres*, abogado de la parte recurrente; *Ronald L. Rosenbaum* y *José R. Cintrón Rodríguez*, de *Woods, Rosenbaum & Luckeroth*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El 2 de agosto de 1991 VELCO demandó en cobro de dinero a Industrial Service Apparel, a los esposos Héctor R. Rodríguez Ramírez y Wanda N. Medina, y su sociedad legal de gananciales.(¹) Como nunca contestaron la demanda, se les anotó la rebeldía el 10 de enero de 1992. El 13 de noviembre de 1992 el Tribunal de Primera Instancia, Sala de Humacao (Hon. Francisco J. Viera Cruz, Juez), dictó sentencia en rebeldía por treinta y un mil ciento veintisiete dólares con noventa y un centavos ($31,127.91), más intereses y honorarios de abogados fijados en siete mil doscientos setenta y cinco dólares con sesenta y siete centavos ($7,275.67). Esta sentencia fue notificada al matrimonio Rodríguez-Medina el 22 de diciembre de 1992.

El matrimonio Rodríguez-Medina abandonó la Isla debido a que Rodríguez era empleado del Negociado Federal de Investigaciones (conocido como F.B.I., por sus siglas en

---

(¹) La causa de acción estaba predicada en un contrato de arrendamiento financiero·(*Lease Agreement*) suscrito entre VELCO e Industrial Service Apparel Corp. como arrendatario. Los esposos Rodríguez-Medina se obligaron personalmente a garantizar su cumplimiento y el pago de las obligaciones o deudas en que incurriera Industrial, o al pago de ambos.

inglés) y fue trasladado a otra jurisdicción. El 13 de julio de 1993 los esposos suscribieron con Associates Relocation Management, Inc. (en adelante Associates) en Washington D.C., un escrito titulado *Homesale Agreement* en el cual se comprometieron a venderle un inmueble localizado en Tintillo Gardens, Guaynabo, por su precio de tasación ascendente a doscientos cuarenta y cuatro mil dólares ($244,000). Como parte del contrato, el matrimonio otorgó una declaración jurada en la cual aseguraba que no existían contra ellos pleitos pendientes ante ningún tribunal ni tampoco cargas o gravámenes existentes contra la propiedad que estuviesen contenidos, excepto tres (3) hipotecas inscritas en el Registro de la Propiedad.

El 20 de julio los vendedores recibieron veinticinco mil novecientos noventa y nueve dólares con treinta y cinco centavos ($25,999.35), balance del precio acordado, luego de descontados las cargas y gastos. A partir de ese mes, Associates reparó el techo de la propiedad, luego la pintó, limpió y le dio mantenimiento. Contrató a una compañía de bienes raíces para que gestionara su venta. El 13 de septiembre de 1993 pagó a los acreedores el balance pendiente de tres (3) hipotecas que gravaban el inmueble, ascendentes a doscientos quince mil cuatrocientos sesenta dólares con sesenta y siete centavos ($215,460.67).

Sin embargo, desde el 27 de agosto de 1993 VELCO había ya solicitado, del tribunal de instancia, una orden de ejecución, anotación de embargo y prohibición de enajenar y gravar el referido inmueble. El 14 de octubre, el tribunal emitió la orden solicitada y, el 11 de diciembre —o sea, casi cinco (5) meses después de que Associates adquiriera de los demandados Rodríguez-Medina dicho inmueble— presentó en el Registro de la Propiedad el mandamiento de anotación de embargo. No surge del expediente que los esposos Rodríguez-Medina fueran notificados del embargo.

El 30 de diciembre la Lcda. Carolyn Boren, abogada de Associates, solicitó mediante una carta, a la agencia de co-

bros de VELCO (Branch & Day) una copia de la sentencia, demanda, orden y el mandamiento de ejecución de la sentencia contra los esposos Rodríguez-Medina. El 10 de febrero de 1994 Associates y los esposos Rodríguez-Medina, representados por mandatarios, otorgaron en Puerto Rico ante notario una escritura de ratificación de *Homesale Agreement.* Ésta fue presentada en el Registro de la Propiedad el 10 de mayo de 1994.

El 16 de febrero de 1994 Associates pidió su intervención ante el tribunal de instancia. Solicitó la sustitución del embargo y la prohibición de enajenar de VELCO por una fianza. Simultáneamente, consignó cuarenta y dos mil dólares ($42,000), que fueron aceptados por el tribunal.

Tras varios trámites procesales, el 27 de junio de 1995 el tribunal de instancia (Hon. Carlos Soler Aquino, Juez) declaró válida la anotación de embargo y ordenó el pago de la sentencia con cargo a la fianza prestada por Associates. Determinó que la intención de los esposos Rodríguez–Medina al vender la propiedad a la interventora Associates era "burlar los derechos de la demandante [VELCO], quien no fue parte de un contrato [sic] ni tuvo conocimiento del mismo". Solicitud de revisión, Apéndice, pág. 4. Razonó, que el embargo anotado el 11 de diciembre de 1993 prevalecía sobre el negocio hecho el 13 de julio del mismo año, toda vez que el negocio *era nulo porque los esposos Rodríguez-Medina habían incurrido en dolo grave.* Señaló que dichos esposos, con pleno conocimiento de la orden, intencional y dolosamente, vendieron el inmueble a Associates para evadir el cumplimiento de sus obligaciones contractuales con VELCO. Entendió que no se debía aplicar la norma de *Pérez Mercado v. Martínez Rodón*, 130 D.P.R. 134 (1992), expositiva de que un título anterior a la anotación de embargo prevalece sobre ésta, aunque se inscriba posteriormente.

Associates acudió al Tribunal de Circuito de Apelaciones. El 14 de diciembre de 1995 el reputado foro,

(Hons. C.A. Pesante Martínez, E.E. Rivera Pérez y A.J. Amadeo Murga, Juez Ponente) revocó. Decretó que la propiedad adquirida por Associates estaba libre del embargo. Ordenó su cancelación y la de la fianza. Dictaminó que a través de la compraventa en Estados Unidos, los esposos Rodríguez-Medina transfirieron el título de su propiedad, por lo que el embargo no se trabó sobre sus bienes y por lo tanto su adquiriente, Associates, no respondía por el monto del embargo. Razonó que el ocultarle los esposos Rodríguez-Medina a Associates la existencia de la deuda con VELCO y la sentencia por cobro de dinero en su contra, no fue un engaño que afectara al comprador, Associates. El dolo fue contra un tercero, VELCO, no una parte contratante. Por tal razón, concluyó que no existió vicio en el consentimiento que anulara el contrato. VELCO apeló.([2])

---

([2]) La demandante apelante VELCO invoca correctamente nuestra jurisdicción en virtud del Art. 3.002(f) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(f)), *vigente entonces*, que establecía que revisáramos mediante apelación las sentencias del Tribunal de Circuito de Apelaciones que revocara una sentencia o resolución del Tribunal de Primera Instancia.

Hace y argumenta los siguientes señalamientos de error:

"Erró el Honorable Tribunal de Apelaciones ... Circu[i]to Regional VI, al revocar la Resolución emit[i]da por el Tribunal de Primera Instancia, Sala Superior de Humacao, en su dict[a]men del 27 de junio de 1995, reconociéndole validez a la transacción de Compraventa efectuada en los Estados Unidos el día 13 de julio de 1993. Específicamente erró dicho Tribunal al no reconocer que hubo dolo en la referida venta y que [e]so anulaba la misma.

"Erró claramente el Honorable Tribunal Apelativo al no resolver que los hechos del presente caso, por la conducta dolosa y en fraude de acreedores de los vendedores, eran suficientes para que no se aplicara la doctrina de *Segarra vs. Viuda de Llor[é]ns*, 99 DPR 60 (1970).

"Erró claramente el Honorable Tribunal Apelativo al no resolver que el Interventor–Recurr[i]do ASSOCIATES realizó actos afirmativos tanto antes como después del otorgamiento del Contrato de Compraventa el 13 de julio de 1993, para defraudar al Acreedor VELCO.

"Erró claramente el Honorable Tribunal Apelativo al no resolver que la Compraventa realizada por el referido contrato privado no podía ser ratificada mediante escritura pública, ya que a partir del día 30 de diciembre de 1993 el Recurr[i]do–Interventor ASSOCIATES por conducto de su abogada Lcda. Carolyn Boren tenía pleno conocimiento del grav[a]men judicial que existía sobre dicho inmueble, y por ende la Ratificación hecha el 10 de febrero de 1994 fue nula y no podía servir para subsanar el dolo realizado mediante el referido contrato de Compraventa.

"Erró claramente el Honorable Tribunal Apelativo al no aplicar la doctrina del contrato en daño de terceros a los hechos del presente caso." (Énfasis suprimido.) Solicitud de revisión, págs. 6–7.

I

Cuestiona VELCO que el Tribunal de Circuito de Apelaciones validara la compraventa entre los esposos Rodríguez-Medina y Associates, toda vez que ésta se realizó con el único propósito de defraudarle. Sostiene su nulidad porque fue producto del dolo y, además, en fraude de acreedores. Aduce que la compradora Associates tenía conocimiento de la deuda personal de los vendedores, por lo que el contrato de compraventa fue efectuado en daño de tercero. Fundamentado en estos argumentos, alega que la compraventa fue nula, sin valor alguno, por lo que el embargo inscrito prevalece. *No tiene razón.*

■ En *Pérez Mercado v. Martínez Rodón,* supra, resolvimos que una anotación de embargo " 'no crea ni declara derecho alguno a favor del anotante; no altera la naturaleza de las obligaciones, ni puede convertir en real e hipotecaria la acción que carezca de este carácter [y] no reserva rango como la mención' ". Íd., pág. 146. Fuimos enfáticos al establecer que *una anotación preventiva de embargo no afecta los títulos anteriores a la anotación aunque se hayan inscrito con posterioridad a ésta.*

Surge de los documentos obrantes en autos que los esposos Rodríguez-Medina y la interventora Associates otorgaron el contrato de compraventa denominado *Homesale Agreement, cinco (5) meses antes de que se presentara en el Registro de la Propiedad el mandamiento de embargo en favor de VELCO.* Dicho contrato fue *ratificado* mediante una escritura pública el 10 de febrero de 1994 y presentado en el Registro el 10 de marzo de ese año, o sea, con posterioridad a la anotación de embargo.

Si el inmueble sobre el cual VELCO anotó el embargo en ejecución de sentencia no le pertenecía en ese momento a los esposos deudores Rodríguez-Medina, no quedó afectado por el embargo. Debemos, pues, determinar si el con-

trato de compraventa tuvo el efecto de transmitir el dominio de la propiedad a la interventora Associates.

■ En *Segarra v. Vda. de Lloréns*, 99 D.P.R. 60, 72 (1970), adoptamos el criterio *pragmático* sobre la entrega del dominio. Allí resolvimos que el contrato de compraventa por sí solo no transfiere el dominio de la cosa vendida. Para transmitir el dominio, nuestro ordenamiento exige: (1) el acuerdo de voluntades sobre la cosa y el precio, o sea, el perfeccionamiento del contrato,[3] y (2) la tradición o entrega de la cosa.[4] Sobre la entrega, dijimos que se entenderá hecha cuando se ponga la cosa vendida en *poder* y *posesión* del comprador.[5] Íd., pág. 76.

■ A la luz del transfondo fáctico anterior a la anotación de embargo, es ineludible concluir que efectivamente los esposos Rodríguez-Medina entregaron el dominio del inmueble el 13 de julio de 1993. En ese momento Associates asumió el control total de la propiedad. El posterior otorgamiento de la escritura de ratificación fue sólo eso: un acto para convalidar una anterior compraventa completamente válida. Recordemos que no es necesario para la validez del contrato que éste se haga constar en documento público, pues los contratos son obligatorios independientemente de la forma en que se hayan celebrado, según lo dispone el Art. 1230 del Código Civil, 31 L.P.R.A. sec. 3451.[6] *Río v. Vázquez*, 17 D.P.R. 672, 679 (1911).

No hay controversia en que los esposos Rodríguez-Medina eran dueños del inmueble en cuestión. Del contrato se desprende la voluntad expresa de las partes de entregar y recibir dicha propiedad respectivamente. Además de esa intención expresada en el contrato, recibieron

---

[3] Art. 1339 Código Civil, 31 L.P.R.A. sec. 3746.

[4] Art. 549 del Código Civil, 31 L.P.R.A. sec. 1931.

[5] Art. 1351 del Código Civil, 31 L.P.R.A. sec. 3811.

[6] Hemos revisado el referido contrato de compraventa y éste cumple con todos los requisitos que impone nuestro ordenamiento para la validez de los contratos. Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391.

la totalidad del pago a que tenían derecho y el comprador asumió el control de la propiedad. Realizó, a su vez, actos de dominio, como lo es la reparación de la propiedad, y dispuso para la venta y el pago de sus cargas hipotecarias. Como correctamente concluyó el Tribunal de Circuito de Apelaciones, la transferencia del dominio, para todo propósito económico y práctico, se efectuó en ese momento.

## II

En cuanto al planteamiento de nulidad del contrato de compraventa por ser producto del dolo, resolvemos que VELCO carece de legitimación para impugnar el contrato. Veamos.

El Art. 1221 del Código Civil dispone:

> Hay dolo cuando con palabras o maquinaciones insidiosas de *parte de uno de los contratantes, es inducido el otro a celebrar* un contrato que, sin ellas, no hubiera hecho. (Énfasis suplido.) 31 L.P.R.A. sec. 3408.

Además, para que se produzca la nulidad de los contratos, el dolo deberá ser grave. Art. 1222 del Código Civil, 31 L.P.R.A. sec. 3409.

De otra parte, el Art. 1254 del mismo cuerpo dispone quiénes serán las personas con legitimación para ejercitar una acción de nulidad de contrato. Dispone:

> *Pueden ejercitar la acción de nulidad de los contratos los obligados principal o subsidiariamente en virtud de ellos.* Las personas capaces no podrán, sin embargo, alegar la incapacidad de aquéllos con quienes contrataron; ni los que causaron la intimidación o violencia, o emplearon el dolo o produjeron el error, podrán fundar su acción en estos vicios del contrato. (Énfasis suplido.) Art. 1254 del Código Civil, 31 L.P.R.A. sec. 3513.

De este precepto surge que un tercero que no ha sido obligado, ni principal ni subsidiariamente, por un contrato carece de legitimación activa para impugnarlo por

razón de dolo. Cabe señalar que lo anterior es cierto sólo en aquellos casos en que el contrato sea anulable; en cambio, si el planteamiento es de *nulidad absoluta,* como sería en los casos de una simulación, el tercero estará legitimado para hacer valer la nulidad del contrato siempre que demuestre que éste lesiona o pone en peligro sus intereses. Sólo en estos casos se justifica que no se extienda la limitación del Art. 1254, *supra. Sucesión Morales v. Kieckoefer et al.,* 17 D.P.R. 926, 929 (1911); M. Albaladejo, *Comentarios al Código Civil y compilaciones forales,* Madrid, Ed. Edersa, 1995, T. XVII, Vol. 2, págs. 365–367.

El planteamiento de dolo esbozado por VELCO presupone un vicio del consentimiento que podría dar lugar únicamente a una acción de anulabilidad del contrato. Por lo tanto, según expresado, la única parte con legitimación para ejercitar dicha acción era Associates, entidad obligada principalmente, según el contrato. No se cometió el error.

## III

Reclama VELCO que el contrato de compraventa es nulo por razón de la doctrina de contrato en daño de tercero. Para apoyar tal contención asegura que Associates advino en conocimiento del engaño perpetrado por los esposos Rodríguez-Medina y que, por lo tanto, participó de la compraventa con el propósito de causarle daño a VELCO. Alega, además, que aún asumiendo que Associates estuviese ajena al supuesto esquema fraudulento, el derecho vigente no requiere que se pruebe la complicidad de la apelada. No podemos concurrir con el apelante.

*No existe evidencia de que Associates tuviera conocimiento de la deuda de los esposos Rodríguez-Medina y de la sentencia que recayó en contra de éstos, al momento de realizar la compraventa.* Associates advino en conocimiento de la sentencia y anotación de embargo el 11 de diciembre de 1993, o sea, con *posterioridad* al otorgamiento del contrato

de compraventa. Así lo reconoce VELCO en su Escrito de Apelación.

Según la prueba presentada, quedó establecido que Associates mantenía un acuerdo contractual con el F.B.I. para adquirir las residencias de los empleados de esta agencia, cuando éstos fueran reubicados. Rodríguez, empleado del F.B.I., fue reubicado y Associates procedió a comprar el inmueble propiedad de los esposos. Como parte de ese contrato, los esposos Rodríguez-Medina aseguraron bajo juramento que no existían pleitos pendientes en su contra, embargos u otras cargas sobre la propiedad vendida. VELCO no inscribió la Sentencia de 13 de noviembre de 1992 en el Registro de Sentencias del Registro de la Propiedad, lo que impidió a Associates conocer de dicho dictamen, sino que optó por presentar la anotación de embargo luego de haber transcurrido más de un (1) año. Por su parte, Associates realizó al menos cuatro (4) estudios registrales sobre la propiedad, anteriores a la anotación de embargo.[7]

Por otro lado, el tribunal de instancia, a pesar de su decisión, entendió, como cuestión de hecho, que Associates fue víctima de dolo y que *no tenía conocimiento de la mencionada sentencia y anotación de embargo al momento de realizar el negocio con los esposos Rodríguez-Medina*. Ello es prueba incontrovertida de que Associates no tuvo intención de defraudar a VELCO. Ante este cuadro fáctico, aclaremos ahora las consecuencias legales de la compraventa realizada por Associates y los esposos Rodríguez-Medina.

■ En *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197 (1988), establecimos que existen dos (2) supuestos bajo los cuales los contratantes ocasionan daños a terceras personas. Cada supuesto produce consecuencias jurídicas diferentes. En el primer supuesto, ambos contra-

_____

[7] Realizados el 22 de mayo, 9 de julio, 20 de septiembre y 26 de octubre de 1993.

tantes se conciertan para ocasionar un daño al tercero. En ese caso, el contrato tiene causa ilícita y éste es nulo. Íd., págs. 216–217.

En el segundo supuesto —aplicable a los hechos de este caso— *no existe concierto entre ambos contratantes*, sino que el daño ha sido buscado por una de las partes y es desconocido por la otra. *En esos casos, la causa no puede decirse es ilícita, por lo que el tercero lesionado, VELCO, sólo dispone de una acción de resarcimiento o indemnización frente al culpable, los esposos Rodríguez-Medina.* Véase L. Díez-Picazo, *Fundamentos del Derecho Civil patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I, pág. 293.[8]

## IV

Tócanos, pues, resolver si el negocio efectuado entre los esposos Rodríguez-Medina y Associates se realizó en fraude de acreedores, y procedió la rescisión del contrato de compraventa. El Art. 1243(3) del Código Civil, 31 L.P.R.A. sec. 3492(3), dispone que los contratos son rescindibles cuando son "celebrados en fraude de acreedores, cuanto éstos no puedan de otro modo cobrar lo que se les deba".

Por su parte, el Art. 1249 del mismo Código establece que se *presumen* en fraude de acreedores "las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes". 31 L.P.R.A. sec. 3498. La presunción consignada en dicho artículo admite prueba en

---

[8] Como correctamente resolvió el Tribunal de Circuito de Apelaciones, en el caso *Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197 (1988), omitimos mencionar esta segunda modalidad por no ser de aplicación a los hechos específicos de ese caso. Reafirmamos la adopción de esta segunda modalidad y las consecuencias jurídicas que en dicha obra se explican.

contrario. *De Jesús Díaz v. Carrero*, 112 D.P.R. 631, 636–637 (1982).

■ Como remedio, la rescisión es de carácter *excepcional* y *subsidiaria*, y sólo procederá en los casos visualizados en la ley y cuando el perjudicado carezca de todo otro recurso legal para obtener la reparación del perjuicio. Arts. 1242 y 1246 del Código Civil, 31 L.P.R.A. secs. 3491 y 3495; *De Jesús Díaz v. Carrero*, supra, pág. 638; *García Zaragoza v. García Ortiz*, 83 D.P.R. 594, 595–596 (1961); *Serrano v. Torres*, 61 D.P.R. 162, 167 (1942); L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II, pág. 120.

En *Hernández v. Rosado et al.*, 20 D.P.R. 175, 180 (1914), en ocasión de interpretar el Art. 1264 del Código Civil de 1902, antecesor del actual Art. 1249, *supra*, establecimos que para que tuviera lugar la mencionada presunción, es necesario que concurran las circunstancias siguientes:

(a) que se dicte sentencia condenatoria contra una persona, o que se expida un mandamiento de embargo contra sus bienes;

(b) que esa persona venda sus bienes a otra que también tenga conocimiento de la sentencia o del embargo; y

(c) que exista un acreedor perjudicado por la enajenación que carezca de todo otro recurso legal para obtener la reparación del perjuicio.

En cuanto al segundo requisito (marcado con la letra "b"), los tratadistas están contestes en que para que prospere la acción rescisoria de la compraventa por fraude de acreedores *es necesario que el comprador y el vendedor se hayan confabulado para defraudar a los acreedores del último.* Al respecto expresa Puig Brutau:

La enajenación o acto dispositivo ha de haber sido otorgado por el deudor con la intención de sustraer bienes a la acción de los acreedores (*consilium fraudis*), y *además, si la enajenación es onerosa, el adquiriente ha de haber tenido conocimiento, al hacer la adquisición, de aquel designio fraudulento del enaje-*

*nante (conscius fraudis).* (Énfasis suplido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona Ed. Bosch, T. II, Vol. I, pág. 335.[9]

■ *Recapitulemos*: la adquisición de un bien a título oneroso por contrato directo con el deudor se presume en fraude de acreedores por ambas partes (adquiriente y deudor), si antes de que ocurra la enajenación se hubiese dictado sentencia condenatoria o expedido mandamiento de embargo de bienes. Establecido el hecho a base de la presunción de ley, corresponde al adquiriente o al deudor ofrecer prueba del desconocimiento de la sentencia o el embargo que sujetaba el bien al momento de la enajenación. Por último, el acreedor impugnante deberá demostrar la inexistencia de bienes suficientes en el patrimonio del deudor, aparte de los enajenados, para satisfacer su crédito.

## V

La prueba, según lo explicado anteriormente, estableció que Associates fue un adquiriente a *título oneroso y de buena fe*. Associates presentó prueba satisfactoria de que ignoraba, al momento de contratar, la sentencia recaída contra los esposos Rodríguez-Medina. Además, demostró que realizó varias diligencias para conocer si sobre la propiedad que iba a adquirir pesaban cargas o embargos adicionales a los que ya tenía conocimiento. *Por su parte, VELCO no rebatió dicha prueba y quedó como hecho incontrovertido el desconocimiento de Associates.*

VELCO tampoco presentó prueba de que los deudores, esposos Rodríguez-Medina, se colocaron en un estado de insolvencia al enajenar el inmueble, cosa que no permitió que éstos pudieran satisfacer su acreencia. Todo lo contra-

---

[9] Véanse, además: R.M. Roca Sastre, *Derecho Hipotecario*, 6ta ed., Barcelona, Ed. Bosch, 1968, T. II, pág. 688; J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, pág. 767.

rio, según el propio Memorándum de Derecho presentado por VELCO ante el Tribunal de Circuito de Apelaciones, para el 31 de marzo de 1989 el estado financiero de los esposos Rodríguez-Medina reflejaba un valor neto (*net worth*) de doscientos veintinueve mil dólares ($229,000). Más aún, surge del referido estado financiero que los esposos, además de la propiedad en controversia, poseían dos (2) inmuebles adicionales, valorados en doscientos setenta mil dólares ($270,000). Alegato del recurrente, Apéndice II, págs. 23 y 88–91. Correspondía a VELCO alegar y probar que carecía de otro recurso para obtener la reparación del perjuicio sufrido y no lo hizo.

En vista de que no se estableció que Associates tenía conocimiento del designio fraudulento de los esposos Rodríguez-Medina y de la inexistencia de bienes en el patrimonio de éstos para satisfacer sus deudas, resolvemos que la compraventa impugnada no cumple con los requisitos de una venta en fraude de acreedores, según lo establecido en el Código Civil. Art. 1242 (31 L.P.R.A. sec. 1242 *et seq.*); *Serrano v. Torres*, supra.

## VI

Finalmente, VELCO reclama la nulidad de la escritura de ratificación del *Homesale Agreement* realizada el 10 de febrero de 1994. Aduce la existencia de un conflicto de intereses en que alegadamente incurrió una de las partes que intervino como apoderado en dicha escritura.

Surge de los documentos presentados en evidencia que el 21 de junio de 1993 se otorgó un Poder Especial (*Special Power of Attorney*) ante la Lcda. Carolyn Boren, en el cual los esposos Rodríguez-Medina autorizaban a *Wanda Rivera Rivera, secretaria de la licenciada Boren,* y a Diana Lozano Palacios, a representarlos en cualquier escritura pública otorgada en Puerto Rico para la venta del inmueble perteneciente a éstos.

El 10 de febrero de 1994 se otorgó ante la licenciada Boren un Poder Especial titulado *Limited Power of Attorney to Execute Deed of Ratification of Homesale Agreement and to Sell, Transfer and Convey Property located in Puerto Rico*, otorgado en el Distrito de Columbia, Estados Unidos. En este Poder, Associates autorizaba a *Wanda Rivera Rivera* y a Fernando Echegaray Martínez para que cualquiera de éstos la representaran en la escritura de ratificación.

En la misma fecha, o sea el 10 de febrero, se otorgó la escritura de ratificación del *Homesale Agreement*. Compareció *Wanda Rivera Rivera* en representación de los esposos Rodríguez-Medina. Por su parte, Associates estuvo representado por Fernando Echegaray Martínez.

Argumenta VELCO que, debido a que Wanda Rivera Rivera estaba autorizada a representar a ambos contratantes, los esposos Rodríguez-Medina y Associates, en la escritura de ratificación, ésta incurrió en un claro conflicto de intereses, lo que anula la mencionada ratificación. Alega, además, que los poderes otorgados ante la licenciada Boren, abogada de Associates, constituyeron unos actos afirmativos para defraudar a VELCO. No tienen razón.

Reafirmamos que el acto de compraventa realizado el 13 de julio de 1993 fue válido y, de por sí, suficiente para transmitir el dominio del inmueble a Associates, quien actuó de buena fe. La posterior ratificación en escritura pública de dicho negocio en nada contribuyó a su validez; ésta sólo hizo posible su entrada al Registro de la Propiedad.

Por los fundamentos expuestos, *se dictará sentencia confirmatoria de la del Tribunal de Circuito de Apelaciones que decretó que la propiedad adquirida por Associates fue libre de embargo y ordenó su cancelación y la de la fianza prestada por la interventora Associates.*

La Juez Asociada Señora Naveira de Rodón emitió un voto particular de conformidad. El Juez Asociado Señor

Fuster Berlingeri concurrió con el resultado sin opinión escrita.

— O —

Voto particular de conformidad emitido por la Juez Asociada Señora Naveira de Rodón.

Aunque hemos dado nuestra conformidad a la opinión del Tribunal, queremos manifestarnos por separado en torno a ciertas expresiones contenidas en la sentencia emitida por el Tribunal de Circuito de Apelaciones, la cual revisamos. En relación con el planteamiento de nulidad por razón de dolo efectuado por VELCO en el Tribunal de Circuito de Apelaciones, el cual repitió ante nos, el foro recurrido expresó lo siguiente:

> El dolo o engaño de los esposos Rodríguez-Medina[,] al no informarle al comprador Associates [Relocation Management, Inc.] que tenían una deuda con VELCO y que habían sido demandados en cobro de dinero[,] no fue un engaño que afectara a la parte compradora de manera tal que pudiera producir la nulidad del contrato. Sentencia recurrida, pág. 6.

Por las razones que expondremos, entendemos desacertadas estas expresiones.

Entendemos que el curso analítico más adecuado en este tipo de controversia es auscultar primero la capacidad legal del promovente para sostener la impugnación del contrato y, luego, después de contestar la primera interrogante en la afirmativa, analizar los méritos del planteamiento de nulidad.

Con relación al primer aspecto, un análisis de las disposiciones legales pertinentes impone la conclusión de que VELCO carece de legitimación activa para sostener su planteamiento de nulidad en relación con el contrato celebrado entre el matrimonio Rodríguez-Medina y Associates. Aplica en este sentido lo dispuesto por el Art. 1254 del Código Civil de Puerto Rico, el cual lee como sigue:

Pueden ejercitar la acción de nulidad de los contratos los obligados principal o subsidiariamente en virtud de ellos. Las personas capaces no podrán, sin embargo, alegar la incapacidad de aquéllos con quienes contrataron; ni los que causaron la intimidación o violencia, o emplearon el dolo o produjeron el error, podrán fundar su acción en estos vicios del contrato. 31 L.P.R.A. sec. 3513.

Respecto al tema que discutimos, se expresan varios tratadistas españoles señalando que el alcance del Art. 1.302 del Código Civil español, homólogo del articulado citado, se extiende plenamente a los supuestos en que se esgrimen planteamientos propios de la anulabilidad de los contratos, como es el dolo, que infringe en todo caso la validez del consentimiento brindado. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1978, T. II, Vol. I, pág. 321. A los efectos expresa Puig Brutau lo siguiente:

Como todas las acciones de impugnación, la dirigida a obtener que el contrato sea anulado es constitutiva, en el sentido de que determina la ineficacia de un contrato que hasta entonces ha sido eficaz. Por ello, dice DÍEZ-PICAZO, puede ser considerada como un derecho potestativo o como una facultad de configuración de la situación contractual. En su ejercicio hay que distinguir estos aspectos.
1. *Sujetos legitimados.*—El art. 1.302 dispone: "Pueden ejercitar la acción de nulidad de los contratos los obligados principal o subsidiariamente en virtud de ellos ...."
De este precepto resulta claramente que el ejercicio de la acción sólo corresponde al titular del interés que se trata de proteger. (Escolio omitido.) Puig Brutau, *op. cit.*, págs. 321–322.

Con más especificidad se expresa Delgado Echevarría a los mismos efectos. En relación con Art. 1.302 del Código Civil español ha dicho lo siguiente:

El tenor del precepto, así como su situación, inducen a duda sobre si ha de aplicarse a todo supuesto de nulidad, o si, por el contrario, su alcance se circunscribe a la categoría de la anulabilidad. Prácticamente la cuestión más importante que pendería de responder en uno u otro sentido es la de la legitimación de los terceros para hacer valer la nulidad absoluta de

un contrato por el que no están obligados principal ni subsidiariamente, pero que lesiona o pone en peligro de otro modo sus intereses.

El Tribunal Supremo ha admitido siempre a los terceros interesados al ejercicio de la acción de nulidad absoluta o de pleno derecho, si bien a través de dos caminos distintos, que suponen una inteligencia contradictoria del alcance del artículo 1.302. Una serie de sentencias parten de la aplicación del artículo 1.302 en todo caso, pero lo interpretan en forma tal que no excluya la legitimación de los terceros: dicho artículo afirma la legitimación de los obligados, pero no diría nada respecto de los extraños, que deben entenderse incluidos cuando del contrato pudieran recibir perjuicio. En un línea distinta, que se ha ido depurando con el tiempo, el Tribunal Supremo entiende que el artículo 1.302, a pesar del nombre empleado, se refiere a la nulidad relativa o anulabilidad: mientras que tratándose de "nulidad por inexistencia" —en la terminología del Tribunal: señaladamente, por simulación— la accionabilidad por el tercero interesado no tiene el límite establecido en el citado artículo. Precisamente la necesidad de admitir a los terceros a la acción de simulación (junto con el tema de la prescriptibilidad o no de la misma) fue el motivo principal que llevó al Tribunal Supremo a perfilar la separación tajante entre nulidad y anulabilidad. (Escolio omitido.) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1995, T. XVII, Vol. 2, págs. 365–367.

Ya en una ocasión anterior nos habíamos expresado en cuanto al asunto de legitimación en casos de nulidad, de forma análoga a la expuesta por los tratadistas citados. A los efectos expresamos lo siguiente:

... para que los demandantes tengan derecho para pedir la nulidad de esos contratos, en los que no aparecen obligados principal o subsidiariamente, es preciso que de la demanda resulte que han sido perjudicados por los mismos. *Sucesión Morales v. Kieckoefer et al.*, 17 D.P.R. 926, 929 (1911).[1]

En el caso *Sucesión Morales v. Kieckoefer et al.*, supra, específicamente se impugnaban una serie de contratos por

---

[1] Para un análisis más detallado de los conceptos de nulidad y anulabilidad, y el alcance que reconoce la doctrina en cuanto a la legitimación para incoar la acción en uno y otro caso, véase E. Vázquez Bote, *Derecho Privado Puertorriqueño*, San Juan, Ed. Butterworth, 1992, T. IV, Cap. 9.

ser éstos alegadamente simulados, lo cual hubiera dispuesto totalmente de su validez. Representando esto un supuesto de nulidad absoluta, se justifica la extensión del alcance de las normas de legitimación.

En el caso de autos, sin embargo, la situación es distinta. El planteamiento de dolo que se discute en la sección citada supondría en todo caso un vicio del consentimiento, que constituiría a lo sumo un supuesto de anulabilidad. Arts. 1217 y 1253 del Código Civil, 31 L.P.R.A. secs. 3404 y 3512; E. Vázquez Bote, *Derecho Privado Puertorriqueño*, San Juan, Ed. Butterworth, 1992, T. IV, pág. 354. En este caso aplica en toda su extensión la limitación que impone el Art. 1254 del Código Civil, 31 L.P.R.A. sec. 3513, en cuanto sólo puede impugnar el contrato, por razón de dolo, quien esté obligado principal o subsidiariamente por él.

Como dijéramos anteriormente, el análisis más adecuado en este tipo de controversia supone que, una vez contestada la cuestión de la legitimación en la negativa, no se discutan los méritos del planteamiento. No obstante lo anterior, ante las citadas expresiones del Tribunal de Circuito de Apelaciones, creemos necesario auscultar con más detalle los hechos considerados por el foro recurrido en su discusión. En esta parte de la sentencia se resuelve que el engaño efectuado por los esposos Rodríguez-Medina no anuló el contrato. A los efectos señalan que los esposos Rodríguez-Medina omitieron informarle al comprador Associates que tenían una deuda con VELCO y que habían sido demandados en cobro de dinero. Además, en la exposición de los hechos se indica que los esposos Rodríguez-Medina otorgaron "una declaración jurada en donde declaraban que no había contra éstos pleitos pendientes en ningún tribunal y tampoco cargas o gravámenes contra la propiedad que estuviesen contemplados o existentes ...". Sentencia recurrida, pág. 3. Se insinúa en la sentencia que estas expresiones son falsas. Esta conclusión es incorrecta.

En relación con las aseveraciones contenidas en la declaración jurada, es cierto que para el 13 de julio de 1993, fecha en que ésta fue suscrita, no existía contra los esposos Rodríguez-Medina ningún pleito pendiente. Tampoco existía a la fecha carga o gravamen alguno que recayera sobre la propiedad. A los efectos, cabe señalar que la sentencia final en cobro de dinero contra el matrimonio fue dictada el 13 de noviembre de 1992 y notificada el 22 de diciembre siguiente, por lo que para el 13 de julio de 1993 ya este pleito había concluido; no estaba pendiente. Igualmente, cabe señalar que no fue sino hasta más de un (1) mes después, el 27 de agosto de 1993, que VELCO solicitó la ejecución de la sentencia. El mandamiento de embargo que se emitió a su favor fue presentado en el Registro de la Propiedad casi cinco (5) meses más tarde, el 11 de diciembre del mismo año. Por lo tanto, a la fecha en que los esposos Rodríguez-Medina suscribieron la referida declaración jurada efectivamente no existía carga o gravamen alguno sobre la propiedad, con excepción de las hipotecas inscritas. En resumidas cuentas, la información consignada en la declaración jurada no era falsa.

Por razones similares, tampoco incidieron los esposos Rodríguez-Medina en falta alguna al no informarle a Associates sobre la deuda con VELCO. Debemos recordar que se trataba aquí de una acción personal de cobro de dinero. El carácter personal de la deuda aquí en cuestión nos trae a una consideración que debemos tomar en cuenta al analizar el planteamiento de nulidad por razón de dolo del contrato de compraventa de la propiedad inmueble aquí involucrada. ¿Podemos sostener que la omisión de informar sobre la existencia de deudas personales que tenga una de las partes de un contrato que verse sobre un bien inmueble puede viciar el consentimiento brindado por la otra parte, cuando el bien que es objeto del contrato no está gravado de forma alguna con derecho de garantía en relación con esa deuda? Entendemos que no. Sencillamente, en

nuestro ordenamiento, bajo las consideraciones reseñadas, esa información es totalmente impertinente, por lo que la omisión de proveer dicha información nunca puede sostener una imputación de dolo. Bajo estas circunstancias, ni siquiera podría sostenerse la pretensión de que el comprador retenga una cantidad de dinero del precio de compraventa para pagar dicha deuda. En casos como el presente, la existencia de una deuda personal que no esté garantizada con la propiedad que es objeto de la compraventa no le compete al comprador, por lo que no puede incidir de forma alguna sobre el consentimiento brindado por éste y, por lo tanto, sobre la eficacia del negocio. En atención a lo anterior, aún siendo cierto que los esposos Rodríguez-Medina omitieron informarle a Associates que tenían una deuda con VELCO, por sí sola dicha omisión debe considerarse inmaterial para fines de la determinación de ineficacia del contrato, cuando éste se impugna por razón de dolo.

En conclusión, por las razones expuestas, VELCO carecía de legitimación para sostener el planteamiento de nulidad por dolo. Esa determinación hace innecesario toda discusión ulterior sobre los méritos del planteamiento. Sin embargo, de discutirse los méritos de dicha pretensión, los hechos reseñados por la sentencia recurrida a su tenor deben analizarse en consideración a los elementos que hemos reseñado. Es decir, la razón de decidir como se hace no es que el engaño o la omisión en que alegadamente incurrió el matrimonio Rodríguez-Medina al contratar con Associates sea insuficiente para anular el contrato por razón de dolo, como parece sostener la sentencia recurrida. La impugnación por dolo es improcedente ya que el matrimonio no engañó a Associates y la omisión de informarle respecto a la sentencia que había recaído en su contra es totalmente inmaterial para fines de dilucidar la presente controversia.