# 2002 DTA 130

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE CAROLINA-FAJARDO**

JOSE ERNESTO LOMBA RODRIGUEZ, IRIS RAQUEL MORALES PEREZ,
POR SI Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES
QUE AMBOS COMPONEN
Apelados

v.

DELIA QUIÑONES ORTIZ, PABLO GELABERT, POR SI Y EN REPRESENTACION
DE LA SOCIEDAD LEGAL DE BIENES GANANCIALES QUE AMBOS COMPONEN;
DR. ELOY LUCIANO QUIÑONES
Apelantes

Núm. KLAN-02-00272

San Juan, Puerto Rico, a 22 de agosto de 2002

Panel integrado por su Presidente, Juez Miranda De Hostos,
la Jueza Hernández Torres y el Juez Martínez Torres

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante, Delia Quiñones Ortiz, *et als.*, nos solicita que revoquemos una sentencia del Tribunal de Primera Instancia, Sala Superior de Carolina, que declaró con lugar la demanda de incumplimiento de contrato presentada por la parte apelada José Ernesto Lomba Rodríguez, *et als.* y lo condenó al pago de $16,902.29 por daños económicos, $4,758.00 por depósito de arrendamiento y cánones pagados, $10,000.00 por el lucro cesante y $20,000.00 por los sufrimientos y angustias mentales, más las costas y los intereses legales desde la sentencia.

Alega, en síntesis, que erró el tribunal de instancia, primero, al determinar que la parte apelante cometió dolo en la contratación; y segundo, en la adjudicación de las cuantías concedidas a la parte peticionaria en concepto de depósito de arrendamiento y cánones pagados, daños económicos, angustias y sufrimientos mentales y lucro cesante.

Se confirma la sentencia apelada. Veamos.

### I

Los hechos que dan origen al presente recurso comenzaron el 30 de marzo de 1999, cuando las partes aquí comparecientes otorgaron un contrato de arrendamiento sobre un inmueble consistente de dos (2) estructuras de cemento localizado en la carretera estatal número 187 del Barrio Torrecilla Baja en el sector de Piñones del Municipio de Loíza. (Ap. 30, págs. 99-108.)

El término del contrato de arrendamiento sería de dos (2) años, comenzando el 1 de abril de 1999 y las partes acordaron un canon mensual de $1,300.00 que se comenzaría a pagar a partir del 1 de mayo de 1999. Según surge del contrato citado a continuación, el inmueble sería utilizado por la parte apelada para un negocio de café restaurante con puesto de bebidas alcohólicas y las estructuras contaban con los permisos correspondientes. Así surge de las cláusulas número uno y siete del contrato de arrendamiento:

"...

*NUMERO UNO:[...]*

*[...]Dichas estructuras están dedicadas a uso comercial y tienen facilidades de luz y agua y los permisos correspondientes. [...].*

...

*NUMERO SIETE: "LOS ARRENDATARIOS" dedicarán las estructuras arrendadas para un negocio de café restaurante con expendio de Bebidas Alcohólicas.---*

*(Enfasis suplido.)*

...".

(Ap. 30, págs. 99-101.)

El 17 de agosto de 1999, la parte apelada presentó demanda sobre incumplimiento de contrato, resolución de contrato y daños y perjuicios en contra de la parte apelante. Alegó que debido al incumplimiento de la parte apelante, no había podido operar el negocio según pactado, pues las estructuras arrendadas no contaban con los permisos necesarios para la operación del negocio. En especial, el permiso de uso para restaurante de ARPE había sido denegado el 1 de marzo de 1999, un mes antes de la contratación, y no existían facilidades de agua potable

porque el contador de agua había sido removido previo a la otorgación del contrato de arrendamiento. Reclamó la resolución del contrato, el pago de los gastos incurridos en la preparación del negocio, las ganancias presentes y futuras dejadas de percibir y los daños y perjuicios ocasionados. (Ap. 1, págs. 1-5.)

Luego de varios trámites procesales, se celebró el juicio en su fondo. La parte apelada presentó como prueba documental el contrato de arrendamiento, los recibos de todas las compras realizadas para el negocio y la denegación del permiso de uso de ARPE. Como prueba testifical presentó el testimonio de José Lomba Rodríguez y su ex-esposa Iris Raquel Morales Pérez y el de Ramón Soto, Ferdinand Vázquez y Rey Williams que fueron las personas contratadas por el apelante para la preparación del local. La parte apelada presentó el testimonio de Eloy Luciano Quiñones.

Así las cosas, el tribunal de instancia emitió sentencia declarando con lugar la demanda y condenando a la parte apelante al pago de la suma total de $51,660.29 adjudicado de la siguiente manera: 1) $16,902.29 en concepto de daños económicos; 2) $4,758.00 por el depósito de arrendamiento y cánones pagados; 3) $10,000.00 en concepto de lucro cesante; y 4) $20,000.00 en concepto de sufrimientos y angustias mentales.

Inconforme con la determinación del tribunal de instancia, la parte apelante, Delia Quiñones Ortiz, *et als.*, acude ante nos.

## II

Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a exponer la norma jurídica y su aplicación a los hechos.

Como primer error, alega la parte apelante que erró el tribunal de instancia al determinar que la parte apelante cometió dolo en la contratación.

No le asiste razón.

## A
### Aspectos generales sobre los contratos

Nuestro ordenamiento jurídico dispone que los contratos existen desde que concurren los requisitos de consentimiento, objeto y causa; y desde ese momento, producen obligaciones que tienen fuerza de ley entre las partes contratantes. Art. 1213 y 1044 de Código Civil, 31 L.P.R.A. secs. 3391 y 2994; *Master Concrete Corp. v. Fraya S.E.,* opinión de 30 de noviembre de 2000, **2000 J.T.S. 192**, pág. 456.

Los contratos son fuente de obligaciones que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Art. 1210 de Código Civil, 31 L.P.R.A. sec. 3375; *Amador Parrilla v. Concilio Iglesia Universal,* opinión de 23 de marzo de 2000, **2000 J.T.S. 60**, pág. 877.

Las partes contratantes pueden pactar las cláusulas, pactos y condiciones que le sean convenientes, siempre y cuando las mismas no sean contrarias a las leyes, a la moral, ni al orden público. Art. 1207 de Código Civil, 31 L.P.R.A. sec. 3372; *Jarra Const. v. Axxis Corp.,* opinión de 30 de noviembre de 2001, **2001 J.T.S. 167**, pág. 488.

## B
### El dolo en la contratación

El Artículo 1217 del Código Civil establece que el consentimiento prestado por error, violencia, intimidación

o dolo, será nulo. 31 L.P.R.A. sec. 3404. El consentimiento prestado por dolo se refiere a las palabras o maquinaciones insidiosas que utiliza una parte contratante para inducir al otro contratante a celebrar el contrato, sin las cuales el contratante perjudicado no hubiera contratado. Art. 1221 del Código Civil, 31 L.P.R.A. 3408.

El dolo vicia la voluntad porque una de las partes contratantes se ve inducida a celebrar un contrato, por el error que maliciosamente ha provocado la otra parte contratante. *VELCO v. Industrial Serv. Apparel,* 143 D.P.R. 243, 251 (1997). Se ha reconocido que el dolo incluye, el engaño, el fraude, la falsa representación, la indebida influencia y otras maquinaciones insidiosas. *Cruz v. Autoridad de Fuentes Fluviales,* 76 D.P.R. 312, 319-320 (1954).

La vertiente del dolo que se manifiesta en el propio origen de la contratación causa la anulabilidad del contrato por el vicio del consentimiento. *Márques v. Torres Campos,* 111 D.P.R. 854, 863 (1982). Para que el dolo produzca la nulidad de los contratos, tiene que ser grave y no haber sido empleado por las dos partes contratantes. Si el dolo fuera incidental, sólo obliga al que lo utilizó a indemnizar en daños y perjuicios al contratante perjudicado. Art. 1222 del Código Civil, 31 L.P.R.A. 3409; *VELCO v. Industrial Serv. Apparel, supra; Cruz v. Autoridad de Fuentes Fluviales, supra,* pág. 317.

Se ha definido el dolo grave, conocido también como el dolo causante, como aquél que motiva, sirve de ocasión y lleva a celebrar el contrato. Sin el dolo grave, el contrato no se hubiera otorgado y provoca la nulidad del mismo. En tal caso, procede la devolución de las prestaciones con sus frutos y el precio con los intereses. Art. 1255 del Código Civil, 31 L.P.R.A. 3514; *Rivera v. Sucn. Díaz Luzunaris,* 70 D.P.R. 181, 195 (1949).

De otra parte, en el dolo incidental existe la voluntad de contratar y éste se otorga, independientemente de las maquinaciones insidiosas, y da lugar a que el perjudicado sea resarcido en daños y perjuicios por la pérdida sufrida. *Colón v. Promo Motors Imports, Inc.,* 144 D.P.R. 659, 668-669 (1997).

## C
### Aplicación del derecho a los hechos

Del testimonio del señor Lomba, demandante aquí apelado, surge lo siguiente en cuanto a los permisos:

"...

P   *Con respecto a los permisos de ese local, le pregunto si durante esas conversaciones se habló de ellos.*

R   *Sí, los permisos siempre se... se estuvo pendiente, los permisos supuestamente estaban disponibles, el negocio se podría abrir en cualquier momento.*

P   *¿Quién le dijo que estaban disponibles?*

R   *El señor Luciano.*

P   *¿Cuáles permisos?*

R   *Todos los permisos pa' abrir; el local se podría abrir mañana mismo, esa era la contestación de él. [...]*

...

P   *Sabía... Antes de firmar ese contrato, ¿sabía usted que esa propiedad carecía de permiso de uso?*

*R   No, no tenía conocimiento.*

...

*R   Pues, fui inmediatamente a ARPE a buscar los archivos de los números de los casos.*

...

*R   Ahí me di cuenta de que no sólo los permisos no se estaban consiguiendo a nombre mío, sino que habían sido denegados, habían sido denegados.*

...

*HON. MARIA DEL CARMEN MARTINEZ LUGO:*

*[...], ¿más o menos en qué momento es que usted adviene en conocimiento de esta parte?*

...

*TESTIGO:*

*A mediados de junio.*

*(Enfasis suplido.)*

...".

(T.E., págs. 27, 86-88.)

Aún más, la propia parte apelante admitió en su testimonio que el local arrendado no contaba con los permisos al momento de la otorgación del contrato de arrendamiento.

...

HON. MARIA DEL CARMEN MARTINEZ LUGO:

...¿qué permiso tenía vigente el 30 de marzo del 99 los locales que usted alquiló mediante ese contrato?

TESTGO:

Es lo que le estoy tratando de...de...

HON. MARIA DEL CARMEN MARTINEZ LUGO:

¿Tenía o no tenía un permiso?

TESTIGO:

**No, no, no hay un permiso...no hay ningún permiso de este tipo de índole...**

LCDA. BRYAN PICO:

P    [...]. Y el permiso, usted nos ha atestiguado a preguntas de su abogado, que se lo pudo obtener en marzo 8 de 2000 a nombre de Zaira Collazo...

R    Correcto.

P    ...que es la actual propietaria.

...

**P    ...en marzo 30 del 99 cuando le afirmó en el contrato que tenía los permisos..**

**R    No, es que no podía...**

(Énfasis suplido.)

...

(T.E., págs. 297-298, 321.)

De la prueba presentada, surge claramente que hubo dolo en la contratación, pues la propia parte apelante admitió que contrario a lo estipulado en el contrato, el local no contaba con los permisos al momento de la contratación. La parte apelante tenía conocimiento de que el local no tenía los permisos correspondientes, sin embargo, en todo momento le hizo creer a la parte apelada que el negocio se podía *"abrir en cualquier momento"*. (T.E., págs. 11-12, 26-27, 85-93, 142-146, 151-168, 229-237, 239-243, 247-248, 251-252, 255, 276-282, 291-298 y 319-321. )

La parte apelante tenía conocimiento de la importancia de los permisos para la parte apelada, toda vez que esta última, a requerimiento de la parte apelante, sometió una propuesta del negocio de café restaurante con puesto de bebidas alcohólicas, que se proponía establecer en el local arrendado. (Ap. 30, págs. 104-108.) (T.E., págs. 24-25, 150-151 y 271-272.) Además, el contrato de arrendamiento en la cláusula número uno (1) establece los propósitos para los cuales fue arrendado el local. (Ap. 37, pág. 143.) Resulta evidente que de la parte apelada haber tenido conocimiento de que el local no tenía los permisos correspondientes, no lo hubiera alquilado para establecer su negocio de café restaurante con puesto de bebidas alcohólicas.

Asimismo, la parte apelante también engañó a la parte apelada haciéndole creer que el local contaba con facilidades de agua, cuando la realidad era que no tenía contador de agua. De acuerdo a la cláusula número uno (1) del contrato de arrendamiento, el local contaba con las facilidades de agua. (Ap. 37, pág. 143.) Sin embargo, cuando la parte apelada fue a conectar el servicio de agua, encontró que el local no tenía contador de agua, por lo que no pudo conectar el servicio y tuvo que comprar un contador. Además, debido a que no había agua potable, tuvo que comprar una cisterna de agua. (T.E., págs. 31-33 y 73-74.)

Concluimos que el tribunal de instancia actuó conforme a derecho al determinar que la parte apelante cometió dolo en la contratación, pues ésta engañó a la parte apelada haciéndole creer que el local arrendado contaba con los permisos correspondientes y que tenía facilidades de agua. De la parte apelada haber tenido conocimiento de ello, no hubiera arrendado el local.

Por lo tanto, el contrato de arrendamiento es nulo y la parte apelante tiene que devolver el depósito y los cánones pagados con intereses.

## III

Como segundo error, alega la parte apelante que erró el tribunal de instancia en la adjudicación de la cuantía concedida a la parte peticionaria en concepto de cánones pagados y depósito de arrendamiento.

No le asiste la razón.

Dado el hecho de que la parte apelante cometió dolo en la contratación, el contrato de arrendamiento es nulo y, por lo tanto, procedía la devolución del depósito y los cánones pagados con intereses. La parte apelada pagó $2,600.00 de depósito y pagó el canon de arrendamiento de $1,300.00 correspondiente al mes de junio. (T.E., págs. 36 y 43.)

No obstante el tribunal de instancia actuó conforme a derecho al adjudicar la cuantía de $3,900.00 por el depósito y los cánones pagados, no estableció correctamente los intereses legales que concedió. Valga señalar que de acuerdo al reglamento de la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, el interés legal para enero de 2002, cuando se emitió sentencia, es de seis porciento (6%) y no ocho porciento (8%) como determinó el tribunal de instancia. Regla 44.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Por lo tanto, la parte apelante tiene que pagar a la parte apelada $3,900.00 con un interés de seis porciento (6%) desde el 30 de marzo de 1999 cuando se otorgó el contrato de arrendamiento, equivalente a $4,075.50 dólares. Sobre este particular, el Tribunal de Primera Instancia deberá hacer la corrección del cómputo correspondiente al respecto en la sentencia. *Véase*, Regla 49.1 de Procedimiento Civil, *supra*.

## IV

Como tercer error, alega la parte apelante que erró el tribunal de instancia en la adjudicación de las cuantías concedidas en concepto de daños económicos y angustias y sufrimientos mentales.

No le asiste la razón.

## A
### La responsabilidad civil en daños por dolo contractual

El Código Civil prescribe en su Artículo 1054 que:

*"Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas."*

31 L.P.R.A. 3018.

De otra parte, el deudor en una obligación contractual en el que se pruebe que incumplió con las obligaciones por dolo, responde por todos los daños, *"[q]ue conocidamente se deriven de la falta de cumplimiento de la obligación"*. Art. 1060 de Código Civil, 31 L.P.R.A. 3024.

Ante tal principio, el ordenamiento civil reconoce, y así la jurisprudencia lo ha reiterado, que la indemnización en daños y perjuicios comprende el valor de esa pérdida y la ganancia que se haya dejado de obtener. Art. 1059 de Código Civil, 31 L.P.R.A. 3023; *Mayagüez Hilton Corp. v. Betancourt,* opinión de 19 de febrero 2002, **2002 J.T.S. 29**, pág. 754. (Casos citados.)

**B**
## La adjudicación de daños

La responsabilidad civil en daños y perjuicios es el deber de resarcir al damnificado, otorgándole un valor económico por el daño sufrido mediante la compensación. Es una especie de subrogación real donde la compensación económica crea una situación patrimonial equivalente a la destruida por el daño causado. *Cintrón Adorno v. Gómez*, opinión de 22 de febrero de 1999, **99 J.T.S. 20**, págs. 615-619; *Pagán v. Shiley Caribbean*, 122 D.P.R. 193, 205 (1988). El derecho a ser compensado no puede tener carácter punitivo, sino compensatorio. No se pueden conceder daños especulativos, pues la indemnización no se puede convertir en una industria en busca de ganancias. *Agosto Vázquez v. F.W. Woolworth*, 143 D.P.R. 76, 83 (1997); *Odriozola v. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 615 (1985).

Por último, es principio reiterado que no se intervendrá con la adjudicación de daños por el tribunal de instancia, a menos que la cuantía concedida sea ridículamente baja o exageradamente alta. Es el tribunal de instancia quien está en mejor posición de tomar la decisión, por lo que el tribunal apelativo debe otorgarle deferencia a la adjudicación de daños realizada por el tribunal sentenciador. *López Torres v. González Velásquez*, opinión de 6 de junio de 2000, **2000 J.T.S. 90**, pág. 1211; *Rivera Rodríguez v. Tiendas Pitusa*, opinión de 28 de junio de 1999, **99 J.T.S. 107**, pág. 1245.

**C**
## Aplicación del derecho a los hechos en cuanto a los daños económicos

La parte apelada incurrió en cuantiosos gastos para la preparación y remodelación del local, destinado a café restaurante con expendio de bebidas alcohólicas. Por lo tanto, tiene derecho a la compensación de daños por los gastos incurridos.

La parte apelante presentó prueba documental y testifical sobre los gastos incurridos. Entre ellos, los gastos de depósito y mensualidades de los servicios de agua y luz, el contador de agua, el pronto y las primas pagadas para el seguro del local arrendado, las personas contratadas para laborar en la preparación del local y los materiales para la preparación y decoración del local. (T.E., págs. 52, 57-58, 62-68, 69-74, 83-84, 110-111, 128-129, 137-137, 149, 182-213, 216 y 237-238.) (Ap. 32, 34-36 y 43-61, págs. 115-121, 132-141 y 169-233.)

No encontramos que el tribunal de instancia haya actuado con pasión, prejuicio y parcialidad al otorgar credibilidad a la prueba testifical y documental presentada por la parte apelada para adjudicar los daños económicos. Tampoco es exageradamente alta la cuantía concedida, pues el tribunal de instancia, de acuerdo a la prueba presentada, realizó un desglose de gastos y a base de ello adjudicó los daños económicos. (Ap. 18, pág. 77.)

Concluimos que el tribunal de instancia actuó correctamente al adjudicar los daños económicos; no obstante, surge del anejo de la sentencia que el computo sobre la cuantía fue realizado incorrectamente. La suma de los gastos desglosados no equivale a $16,902.29, sino a $24,658.29. Por lo tanto, el Tribunal de Primera Instancia deberá realizar una enmienda a la sentencia sobre tales extremos. *Véase*, Regla 49.1 de Procedimiento Civil, *supra*.

**D**
## Las angustias y sufrimientos mentales

Las cuantías concedida por el foro de instancia en concepto de sufrimientos y angustias mentales a la parte apelada, no son exageradamente altas, considerando que ésta actuó bajo la creencia de que establecería su negocio de café restaurante con expendio de bebidas alcohólicas, contando con los permisos correspondientes para

comenzar a operar inmediatamente.

Como consecuencia de los actos de la parte apelante, la parte apelada sufrió desilusión de no poder poner en marcha el negocio en el cual habían invertido su tiempo y dinero y, además, su matrimonio sufrió problemas interpersonales. (T.E., págs. 158, 176-180, 217-220, 259)

Concluimos que el tribunal de instancia adjudicó la cuantía de los sufrimientos y angustias mentales correctamente, de acuerdo a la prueba presentada sobre los daños sufridos por la parte apelada.

## V

Como cuarto error, alega la parte apelante que erró el tribunal de instancia al adjudicar la cuantía concedida en concepto de lucro cesante, pues no fue alegado en la demanda y no se pasó prueba pericial sobre ello.

No le asiste la razón.

## A
### La adjudicación de la cuantía por lucro cesante

Cuando los testimonios presentados ponen al tribunal sentenciador en posición de estimar la partida de lucro cesante, no es indispensable la presentación de prueba pericial. Para ello, basta con la presentación de prueba documental o testifical que permitan al juzgador hacer las inferencias pertinentes. *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182, 194 (1995); *Acosta & Rodas, Inc. v. PRAICO*, 112 D.P.R. 583, 608-609 (1982).

## B
### Aplicación del derecho a los hechos

La alegación de la parte apelante sobre que el lucro cesante no fue reclamado en la demanda no es cierta. El párrafo número 14 de la demanda claramente expresa que *"[l]os demandantes estiman que el valor justo de las ganancias presentes y futuras dejadas de percibir en atención al hecho de que la duración del contrato es de seis (6) años, cuyo valor se estima razonablemente en DOSCIENTOS CINCUENTA MIL DOLARES ($250,000)"*.

Por otro lado, la alegación de que no se presentó prueba pericial sobre el lucro cesante es improcedente, pues la misma no es necesaria. La parte apelada presentó prueba sobre las ganancias dejadas de percibir. Declaró que dejó su trabajo, en el cual aproximadamente ganaba $2,500.00 mensuales, para poder dedicarse a preparar el negocio que se proponía establecer en el local arrendado, por lo cual no tuvo ingreso alguno desde el 1 de marzo de 1999 cuando dejó su empleo anterior, hasta noviembre del año 2000, cuando consiguió empleo luego de haber tenido que dar por terminado el contrato de arrendamiento debido al engaño de la parte apelante. (T.E., págs. 213-223.)

Concluimos que el tribunal de instancia actuó correctamente al adjudicar la cuantía de $10,000.00 en concepto de lucro cesante, que es la suma sobre los salarios dejados de percibir por el apelado durante dicho período de tiempo de cuatro (4) meses, en el cual dejó el trabajo para preparar el local arrendado.

## VI
Por los anteriores fundamentos, se confirma la sentencia apelada.

Se devuelve el caso al Tribunal de Primera Instancia para que mediante enmienda de forma a la sentencia, disponga la corrección del cálculo de la suma de los daños económicos y el interés legal correspondiente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.