Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ORIENTAL BANK<br><br>Peticionaria<br><br>V.<br><br>LA SUCESIÓN DE TEMÍSTOCLES ORTIZ APONTE COMPUESTA POR FULANA DE TAL Y MENGANO DE TAL; MARÍA MERCEDES BEYLEY PÉREZ<br><br>Recurrida | KLCE202500020 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>SOBRE: Cobro de Dinero y Ejecución De Hipoteca<br><br>Caso Núm.: GB2021CV00799 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Rodríguez Casillas, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece ante este Tribunal apelativo Oriental Bank (en adelante, "Oriental" o "parte peticionaria") mediante el presente recurso de *certiorari*. Solicita que revoquemos la *Resolución* emitida el **9 de diciembre de 2024**, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (en adelante, "TPI"). Allí, fue declarada *No Ha Lugar* la reconsideración presentada por la parte peticionaria, y se reafirmó la orden emitida el **22 de noviembre de 2024**, en la que se autorizó el retiro de fondos producto de una venta judicial por una cantidad menor a la que se adjudicó en dicha venta.

Luego de ordenar a la parte recurrida mostrar causa por la cual no debíamos de expedir el auto de *certiorari*, no compareció, por lo que damos por perfeccionado el recurso.

Así, procedemos a expedir el auto solicitado y **revocamos** la *Resolución* recurrida por los fundamentos que a continuación expresamos.

**-I-**

El presente caso tiene su génesis el **4 de noviembre de 2021**, cuando Oriental radicó una *Demanda* sobre cobro de dinero y ejecución de hipoteca.[1] Alegó que el 29 de diciembre de 2012, el Sr. Temístocles Ortiz Aponte (en adelante, "señor Ortiz Aponte") suscribió un préstamo hipotecario por la suma de $256,000.00.[2] Como garantía del pago, ofreció un apartamento en el Condominio Plaza del Palmar en Guaynabo, por lo que se constituyó una hipoteca.[3] Cabe destacar que, posteriormente, el señor Ortiz Aponte donó el 50% de la propiedad a su esposa, la Sra. María Mercedes Beyley Pérez (en adelante, "señora Beyley Pérez").[4]

Como parte del contrato, el señor Ortiz Aponte pactó satisfacer la costas y honorarios de abogado en la suma del 10% del principal, en caso de que el acreedor tuviera que acudir al tribunal para el cobro de toda o parte de la deuda.[5] De igual manera, convino pagar los costos, gastos y desembolsos relacionados con la titulación, que fueran incurridos por el acreedor en caso del impago, y que dichos costos y gastos serían garantizados por la hipoteca constituida.[6]

Siendo así, y tras el incumplimiento de los pagos, Oriental radicó la acción contra la sucesión y la viuda del señor Ortiz Aponte, quien falleció en febrero de 2021.

Luego de varios trámites procesales,[7] el **23 de agosto de 2023**,[8] el TPI dictó *Sentencia*, declaró *Ha Lugar* la demanda incoada, y condenó a la parte demandada a pagar solidariamente las

---

[1] Anejo 14 del Apéndice del Recurso de *Certiorari*, a las págs. 77-83.
[2] Anejos 12 y 13 del Apéndice del Recurso de *Certiorari*, a las págs. 44-46, 47-76.
[3] *Íd.*
[4] Anejo 14 del Apéndice del Recurso de *Certiorari*, a la pág. 77.
[5] Anejo 13 del Apéndice del Recurso de *Certiorari*, a la pág. 51.
[6] *Íd.*, a la págs. 60-61.
[7] Entre los que se destaca que Oriental desistió en cuanto a los miembros conocidos de la sucesión, por estos haber repudiado la herencia. No obstante, no se desistió de la señora Beyley Pérez, aunque renunció a su derecho hereditario, porque era codueña registral del inmueble hipotecado. Véase Anejos 15, 16 y 17 del Apéndice del Recuso de *Certiorari*, a las págs. 84-89, 90-93, 94.
[8] Notificada el 28 de agosto de 2023.

siguientes partidas: **$210,907.27** de principal al 1 de noviembre de 2021; **$5,749.83** en intereses al 3.50% anual, computado desde el 1 de febrero de 2021 hasta el 1 de noviembre de 2021, a razón de $20.0317 diarios a partir de dicha fecha; **$367.84** por cargos por demora, computados hasta el 1 de noviembre de 2021, así como los que vencieran de esa fecha en adelante; **$24.00** por concepto de *InspFee Asse* (gastos de inspección); y tres (3) partidas de **$25,600.00**, la primera, pactada contractualmente para costas, gastos y honorarios de abogado, la segunda, por intereses vencidos que se acumularen hasta dicho monto, y la tercera, por adelantos, si algunos, en los que incurriere el acreedor. De igual forma, ordenó la venta en pública subasta del inmueble hipotecado.[9]

El **16 de abril de 2024**, tras haberse declarado desierta la primera, se celebró la segunda subasta del inmueble, y esta le fue adjudicada a Alexis Cartagena Mirach, en representación de Bradbury Funds, Inc., por **$275,000.00**, que fueron consignados en la Unidad de Cuentas del TPI. Siendo así, Oriental solicitó retirar el referido dinero, así como cualquier cantidad acumulada.[10]

No obstante, el TPI ordenó que Oriental sometiera una certificación registral actualizada del inmueble y el balance del préstamo a la fecha de la subasta.[11] Luego de que la peticionaria sometiera los documentos solicitados,[12] el foro *a quo* dispuso que se detallara una partida del balance presentado intitulada *"Other"*.[13] Entre tanto, confirmó la adjudicación por **$275,000.00** de la venta judicial.[14] Ante la orden antes dicha, la parte peticionaria explicó que la partida *"Other"* correspondía a intereses adicionales garantizados, el adelanto corporativo por la presentación de

---

[9] Anejo 2 del Apéndice del Recurso de *Certiorari*, a las págs. 5-8.
[10] Anejo 11 del Apéndice del Recurso de *Certiorari*, a la pág. 43.
[11] Anejo 21 del Apéndice del Recurso de *Certiorari*, a la pág. 109.
[12] *Íd.,* a las págs. 110-113.
[13] Anejo 22 del Apéndice del Recurso de *Certiorari*, a la pág. 114.
[14] Anejo 10 del Apéndice del Recurso de *Certiorari,* a la págs. 41-42.

escritura, gastos por comparecencia a subasta, cargos por mora, inspección y tasación de la propiedad, y deficiencia en la cuenta de reserva "escrow."[15] Sostuvo lo anterior mediante un documento titulado *"Payoff Letter,"* por indicaciones del tribunal.[16]

No obstante, el TPI ordenó que se detallara el cómputo de intereses adicionales reclamados.[17] En cumplimiento de lo anterior, Oriental explicó que estos se trataban del 10% de la suma principal fijado para intereses adicionales, conforme al contrato pactado. Además, resaltó que la cantidad que solicitaba retirar era menor al balance total adeudado de **$316,770.41**.[18]

A pesar de lo antes dicho, el TPI dispuso que se aclarara si se estaba renunciando al cobro de cualquier deficiencia.[19] Oriental explicó que no estaba renunciando afirmativamente al cobro de cualquier deficiencia, sino que, dado que la sucesión del señor Ortiz Aponte repudió su herencia y era una parte desistida en el pleito, no se le podía cobrar la deficiencia. De igual manera, sostuvo que la señora Beyley Pérez, viuda del señor Ortiz Aponte, quien repudió su derecho hereditario, solo constaba como parte en el pleito por ser codueña registral del inmueble hipotecado y no era deudora del préstamo, por lo que tampoco podía cobrársele deficiencia alguna.[20]

Posteriormente, Oriental expuso que, ante el cuestionamiento del tribunal, enmendó el balance de **$316,770.41** del préstamo y le eliminó la partida de **$25,600.00**, para un balance enmendado de **$291,170.41**. Asimismo, resaltó que la cantidad producto de la venta judicial que solicitaba, era menor que el balance.[21]

Sin embargo, el TPI señaló que el estado de cuenta del balance enmendado reflejaba el cobro de intereses calculados al **17 de**

---

[15] *Íd.,* a las pág. 115.
[16] Anejo 23 del Apéndice del Recurso de *Certiorari*, a las págs. 116-118.
[17] Anejo 24 del Apéndice del Recurso de *Certiorari*, a la pág. 119.
[18] *Íd.,* a las págs. 120-121.
[19] Anejo 25 del Apéndice del Recurso de *Certiorari*, a la pág. 122.
[20] *Íd.,* a la pág. 123.
[21] Anejo 26 del Apéndice del Recurso de *Certiorari*, a las pág. 125.

**octubre de 2024**, y no a la fecha de la subasta.[22] Ante ello, Oriental explicó que esto se debía a que se ajustó la cantidad de intereses del periodo comprendido luego de la celebración de la subasta; por lo que en aras de disipar cualquier duda, presentó un nuevo estado de cuenta con los intereses calculados hasta la fecha de la subasta.[23]

Así las cosas, el **22 de noviembre de 2024**, el TPI emitió una *Orden [de] Retiro de Fondos*.[24] En esta, dispuso que los balances presentados por Oriental, a la fecha de la subasta, acreditaban **$210,907.27** por concepto de principal; **$22,513.74** por concepto de intereses; **$1,655.28** en cargos por demora. De igual forma, reconoció **$24.00** por concepto de *InspFee Asse* y **$25,600.00** por costas, gastos y honorarios de abogado. A tales efectos, ordenó el desembolso de **$260,700.29** a favor de la peticionaria.

El **6 de diciembre de 2024**, Oriental presentó una *Moción de Reconsideración*.[25] Alegó que el TPI realizó un ajuste improcedente de **$14,299.71**, ya que en la orden de retiro no fueron contempladas ciertas partidas que, conforme al acuerdo contractual y la propia sentencia emitida, eran recobrables. En particular, adujo que el foro *a quo* no contempló partidas sobre inspecciones y tasaciones, que fueron incurridas por la peticionaria, y que hacían totalizar la suma de la deuda a **$291,296.35**. Sostuvo que esta cantidad se encontraba evidenciada en los documentos oficiales emitidos por el banco, los cuales constaban en el expediente del tribunal. Igualmente, reiteró que no solicitaba la totalidad del balance adeudado, sino **$275,000.00**, el producto de la venta judicial.

Mediante *Resolución*, el **9 de diciembre de 2024**, el TPI declaró *no ha lugar* la *Moción de Reconsideración*.[26]

---

[22] Anejo 27 del Apéndice del Recurso de *Certiorari*, a la pág. 127.
[23] *Íd.,* a las págs. 128-130.
[24] Anejo 28 del Apéndice del Recurso de *Certiorari*, a la pág. 132.
[25] Anejo 29 del Apéndice del Recurso de *Certiorari*, a las págs. 133-137.
[26] Anejo 1 del Apéndice del Recurso de *Certiorari*, a las págs. 1-2.

Inconforme, el **8 de enero de 2025** la parte peticionaria acude ante este Foro apelativo y señala las comisiones de dos (2) errores:

> **Primer error:** *Erró el Tribunal de Primera Instancia al no hacer valer lo determinado en una sentencia dictada, en la que se le condenó a la parte demandada al pago de lo adeudado, acorde con el contrato suscrito entre las partes.*

> **Segundo error:** *Erró el Tribunal de Primera Instancia al ordenar el retiro de los fondos a favor de la parte demandante-recurrente por la suma de $260,700.29 cuando fue evidenciado que la deuda reclamada corresponde a una cantidad mayor ($291,296.35). Debe ordenarse el retiro de los fondos por la suma de $275,000.00; cantidad total que obra consignada en la unidad de cuentas, como producto de la subasta celebrada.*

-II-

-A-

En nuestro ordenamiento rige el principio de la libertad de contratación.[27] Este principio recoge la autonomía contractual de la que gozan las partes para establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a la ley, a la moral o al orden público.[28] De tal manera, que los contratos serán obligatorios, indistintamente de la forma en que se hayan celebrado, ya sea por escrito o verbal, siempre que en ellos concurran las condiciones esenciales para su validez.[29]

El principio de *pacta sunt servanda*, recogido en el Artículo 1233 del Código Civil, establece que: *"[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley."*[30] De ahí que, *"los tribunales están facultados para velar por el cumplimiento de los contratos y estos no deben relevar a una parte del cumplimiento de su obligación contractual, cuando dicho contrato sea legal, valido y no contenga vicio alguno"*.[31]

---

[27] *Oriental Bank v. Perapi, et al.*, 192 DPR 7, 15 (2014).
[28] Art. 1232 del Código Civil, 31 LPRA sec. 9753.
[29] *VELCO v. Industrial Serv. Apparel*, 143 DPR 243, 250 (1997).
[30] 31 LPRA sec. 9754.
[31] *Oriental Financial v. Nieves*, 172 DPR 462, 471 (2007).

**-B-**

La Ley Núm. 210-2015, mejor conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, según enmendada,[32] (en adelante, "Ley Núm. 210-2015"), regula el procedimiento para la ejecución de hipotecas. En lo pertinente, el referido estatuto establece que:

> *Los acreedores hipotecarios posteriores y los titulares de derechos reconocidos en sentencias finales y firmes debidamente anotados o asegurados mediante embargo al crédito que se ejecuta, podrán radicar dentro del procedimiento de ejecución una moción juramentada estableciendo la cuantía del crédito que se les adeuda.*[33]

De igual modo, el Artículo 99 de la Ley Núm. 210-2015, indica que:

> *Una vez se declare con lugar la demanda y advenga final y firme la sentencia dictada en el procedimiento de ejecución de hipoteca, el tribunal ordenará, a instancia del ejecutante, la expedición del correspondiente mandamiento, para que el alguacil proceda a la subasta de los bienes hipotecados.*[34]

Asimismo, celebrada la venta en pública subasta, el Artículo 108 de la Ley Núm. 210-2015, establece lo siguiente en cuanto a la confirmación de la adjudicación o venta judicial:

> ***Si se confirma la venta, el precio de venta se destinará, sin dilación, al pago del crédito hipotecario del acreedor.*** *El sobrante lo depositará el alguacil en la secretaría del tribunal para que éste disponga lo que proceda respecto a los acreedores posteriores siguiendo el orden o rango que cada uno tenga en relación con el crédito ejecutado. Si no existe crédito o responsabilidad posterior alguno o existiendo, queden los mismos atendidos, se entregará el remanente, si alguno, al deudor o al tercer poseedor.*[35]

**-C-**

La doctrina de la ley del caso ha sido llamada la hermana gemela del *stare decisis*.[36] Esta doctrina, en su origen del *common*

---

[32] 30 LPRA sec. 6001 *et seq.*
[33] Véase, Artículo 98 - *Acreedores hipotecarios y titulares de derechos por sentencia posteriores; moción sobre cuantía que se les adeuda; necesidad; cuestiones que no paralizan el procedimiento.* 30 LPRA sec. 6135.
[34] Artículo 99 - *Sentencia; subasta; edicto.* 30 LPRA sec. 6136.
[35] Véase, Artículo 108 - *Confirmación de la venta; disposición precio de venta.* 30 LPRA sec. 6145. *Énfasis nuestro.*
[36] Moore & Currier, *Moore's Federal Practice*, 0.404 [1], 2d ed. 1974, pág. 403.

*law,* fue incorporada en nuestra jurisdicción en el año de 1912 en el caso de *Calzada, et al v. De la Cruz, et al.*[37]

Cabe destacar que *la doctrina de la ley del caso* no se limita a lo decidido mediante sentencia, —sino que se aplica igualmente a las órdenes y resoluciones emitidas por un tribunal que advienen finales y firmes transcurrido el término para la reconsideración por el tribunal que la emite y la revisión en alzada por el tribunal apelativo pertinente— sin que la decisión haya sido modificada o revocada. Además, la norma opuesta postula que un tribunal puede reconsiderar cualquier resolución u orden en cualquier momento, atribuyéndole finalidad solamente a las sentencias.  Sin embargo, esa postura fue rechazada en el caso de *Vega Maldonado v. Alicea Huacuz.*[38] En ese caso, el Tribunal Supremo aseveró que:

> *La dificultad de este enfoque es que esos dictámenes, salvo reconsideración oportuna o que en alzada se dejen sin efecto, ponen fin a incidentes dentro del proceso litigioso escalonado. Negarle finalidad es simplemente poner en entredicho ante abogados y partes, la certeza, seriedad y autoridad que debe caracterizar nuestro sistema procesal-adjudicativo en todas sus etapas críticas antes de que se dicte sentencia, e incluso, luego de ser dictada.*[39]

Asimismo, en *Mgmt. Adm. Servs, Corp. v. ELA,*[40] nuestro Foro Máximo reiteró el significado y la limitación de la *doctrina de la ley del caso,* como sigue:

> *Es doctrina reiterada en nuestro sistema de Derecho que "[l]os derechos y obligaciones adjudicados en el ámbito judicial,* **mediante dictamen firme***, constituyen la ley del caso". Dicho de otra manera, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la "ley del caso".*
> *[…]*
> *Más que un mandato invariable o inflexible, la doctrina recoge una costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras.*[41]

---

[37] 18 DPR 491, 494 (1912).
[38] 145 DPR 236 (1998).
[39] *Íd.,* a la pág. 241.
[40] 152 DPR 599 (2000).
[41] *Íd.,* a la pág. 607. *Énfasis nuestro. Citas omitidas.*

Es decir, el propósito de esta doctrina es que los tribunales se resistan a rexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho.[42]

**-D-**

Nos encontramos ante la atención de un auto de *certiorari* que constituye *"un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior".*[43] Es decir, por discreción se entiende el *"tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción".*[44]  En ese sentido, la Regla 52.1 de Procedimiento Civil delimita las instancias en que habremos de atender y revisar mediante este recurso las resoluciones y órdenes emitidas por los tribunales de primera instancia, a saber:

> *El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.*
>
> *Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.*[45]

Con el fin de que podamos ejercer nuestra facultad discrecional —de entender o no en los méritos de los asuntos planteados mediante este recurso— nuestros oficios se encuentran

---

[42] *Íd.*, a la pág. 608.
[43] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).
[44] *García v. Asociación*, 165 DPR 311, 321 (2005). *Citas omitidas.*
[45] 32 LPRA Ap. V, R. 52.1.

enmarcados, a su vez, en la Regla 40 del Reglamento del Tribunal de Apelaciones.[46] Esta Regla 40 adquiere mayor relevancia en situaciones en las que, de ordinario, no están disponibles otros métodos alternos para la revisión de determinaciones judiciales y así evitar un fracaso de la justicia.[47] Por lo cual, debemos tomar en consideración los siguientes criterios que dicha Regla 40 establece, a saber:

(A) *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*

(B) *Si la situación de hechos planteada es la más indicada para el análisis del problema.*

(C) *Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*

(D) *Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*

(E) *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*

(F) *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*

(G) *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Siendo la característica distintiva para la expedición de este recurso la discreción conferida al tribunal revisor, el Tribunal Supremo de Puerto Rico ha dispuesto que:

*[D]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[48]*

**-III-**

A la luz de la normativa expuesta, procedemos a evaluar los dos (2) errores señalados en el recurso ante nuestra consideración. No obstante, por ser similares entre sí, los mismos serán discutidos conjuntamente.

---

[46] 4 LPRA Ap. XXII-B, R. 40.

[47] *IG Builders et al. v. BBVAPR, supra*, a la pág. 339.

[48] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992). *Citas omitidas.*

En el presente caso, la parte peticionaria recurre de la orden emitida por el TPI sobre el desembolso de una cantidad menor a la solicitada en virtud de una venta judicial, el pacto contractual y la sentencia. Aduce que ello constituyó un abuso de discreción por parte del TPI. Tiene razón. Veamos.

En primer lugar, surge del expediente ante nos que el señor Ortiz Aponte suscribió un contrato de préstamo con Scotiabank. Por lo que para garantizar la deuda, ofreció un inmueble, en el que se constituyó una hipoteca. En lo pertinente, en dicho convenio se estipuló lo siguiente, y citamos:

> *Para el caso de que el acreedor tuviere que acudir a las cortes de justicia para el cobro de todo o parte de la deuda que este pagaré comprende, los suscribientes se obligan a satisfacer todos los gastos en corte y honorarios de abogado en que incurra por el acreedor en la suma [del 10% de la suma principal original].[49]*

De igual manera, establece que:

> *[L]os deudores pagarán todos los costos, gastos y desembolsos, incluyendo una suma razonable para honorarios de abogado, así como los gastos de titulación incurridos o satisfechos en cualquier tiempo por el acreedor hipotecario por falta de los deudores en el pronto cumplimiento de todos los convenios y estipulaciones del pagaré y de esta hipoteca, y dichos costos, gastos y desembolsos deberán ser inmediatamente satisfechos y quedarán garantizados en toda su extensión por la hipoteca.[50]*

Asimismo, el TPI constató las partidas recobrables que fueron pactadas en el contrato de préstamo cuando dictó la sentencia.[51] Sin embargo, en la orden sobre el retiro de los fondos, el foro *a quo* autorizó el desembolso por una cantidad menor a la de **$275,000.00**, la que fue adjudicada en la venta judicial. Esto por cuanto no consideró las partidas que el contrato y la propia sentencia disponen. La referida decisión, contraria a su disposición en la sentencia, que advino final y firme, incidió tanto sobre la ley del caso, como sobre la ley entre las partes: del contrato suscrito.

---

[49] Anejo 13 del Apéndice del Recurso de *Certiorari*, a la pág. 51.
[50] *Íd.,* a las págs. 60-61.
[51] Anejo 2 del Apéndice del Recurso de *Certiorari*, a la pág. 6.

Más aun, la Ley Núm. 210-2015 establece que el precio de venta producto de una subasta se destinará sin dilación al acreedor hipotecario, una vez se confirme la referida venta. En el presente caso, el TPI confirmó la venta judicial por **$275,000.00**, por lo que no tenía discreción para autorizar a Oriental, el acreedor hipotecario, a retirar de los fondos consignados una cantidad menor a la que se adjudicó en la venta judicial.

En fin, concluimos que el TPI erró al autorizar el retiro de los fondos consignados por un valor menor a lo adjudicado en la venta judicial.

**-IV-**

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y **revocamos** la *Resolución* recurrida a los efectos de autorizar el retiro de la totalidad de los fondos consignados como producto de la venta judicial.

Lo acuerda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones