ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| **RAMÓN ÁLVAREZ COLON, MARÍA DEL CARMEN RIVERA NAZARIO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ESTOS**<br><br>**APELANTES**<br><br>v.<br><br>ORIENTAL BANK, MIGUEL TSINTAS COLÓN FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ESTOS, CARMEN ROSA COLÓN SANTIAGO SU ESPOSO FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ESTOS, **NOEL COLÓN SANTIAGO**, SU ESPOSA MENGANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ESTOS Y LA ASEGURADORA XYZ<br><br>**APELADO** | TA2025AP00705 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br><br>Caso Núm.: PO2019CV03024<br><br><br><br>Sobre: Incumplimiento de contrato; daños y perjuicios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de febrero de 2026.

Mediante un recurso de *Apelación* comparecen el señor Ramón Álvarez Colón, la señora María del Carmen Rivera Nazario y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, señores Álvarez-Rivera o apelantes) y nos solicitan que revisemos una *Sentencia Enmendada por Segunda* [sic] emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, TPI o foro primario) el 18 de noviembre de 2025 y notificada el 24 de noviembre de 2025, en la que se desestimó parcialmente la demanda presentada en contra del señor Noel Colón Santiago (en adelante,

señor Colón Santiago o apelado), manteniendo únicamente pendiente la determinación de daños contra la señora Carmen Rosa Colón Santiago.

Por los fundamentos que exponemos más adelante, se *confirma* la *Sentencia* enmendada apelada.

**I.**

El 3 de septiembre de 2019 los señores Álvarez-Rivera instaron una *Demanda*[1] sobre Incumplimiento de Contrato y daños y perjuicios en contra de Scotiabank de Puerto Rico, Miguel Tsintas Colón, Carmen Rosa Colón Santiago, Noel Colón Santiago, y la Aseguradora XYZ. Alegaron que habían adquirido por compraventa una propiedad de la señora Carmen Rosa Colón Santiago, pero que dicha propiedad tenía una deuda contributiva del CRIM por una cantidad estimada de $33,250.00.

Indicaron que, ante ello, los apelantes, la señora Carmen Colón Santiago, el apelado y el licenciado Francisco J. Rivera Bujosa acudieron a una sucursal de Scotiabank en Ponce y solicitaron algún producto financiero que les permitiera mantener el dinero de la deuda depositado en el banco hasta que la señora Carmen Colón Santiago culminara una reclamación que tenía pendiente en el CRIM. Según los señores Álvarez-Rivera, la intención de obtener dicho producto era que, una vez se determinara la cantidad final de la deuda contributiva, la señora Carmen Colón Santiago podría disponer de la cantidad sobrante luego de satisfacer el pago de la deuda.

Según sus alegaciones, el personal del banco les recomendó que el instrumento adecuado a esos fines era un certificado de depósito a nombre de todos y que el dinero allí depositado no podría retirarse unilateralmente por una de las partes, requiriéndose que todos concurrieran al acto de redimir el instrumento una vez se satisficiera la condición de conocer y pagar la deuda del CRIM.

---

[1] Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del TPI.

No obstante, los apelantes sostienen que el dinero fue retirado del banco sin que concurrieran todos los firmantes en el certificado de depósito y en contravención a lo que estipulaba el propio documento. Alegaron que la señora Carmen Colón Santiago había retirado el dinero, sin que se cumplieran las condiciones pactadas, y que tanto esta como su hermano, a sabiendas, de forma premeditada, maliciosa, intencional y/o negligente, conspiraron, acordaron, planificaron y orquestaron un plan para defraudar a los apelantes y apropiarse del dinero que estaba destinado a pagar la deuda del CRIM. Por ello, solicitaron una suma de $50,000 por los daños y perjuicios sufridos, $7,341.98 relacionados con la deuda pendiente en el CRIM, más costas y honorarios de abogado.

Luego de los trámites de emplazamiento[2], el 29 de junio de 2020, el apelado presentó su *Contestación a Demanda*[3], en la cual alegó que no era parte con interés en el negocio jurídico realizado entre su hermana, la señora Carmen Colón Santiago y los apelantes. Añadió que, por instrucciones de su hermana, quien vivía en Estados Unidos, retiró el dinero del certificado de depósito y se lo remitió a esta, por entender que ella era la acreedora de ese dinero.

Con relación a la señora Carmen Colón Santiago, quien también fue emplazada por edicto[4], ante su incomparecencia, los señores Álvarez-Rivera solicitaron que se le anotara la rebeldía.[5] El 2 de noviembre de 2020 el TPI emitió una *Resolución*[6] mediante la cual ordenó que se le anotara la rebeldía. Posteriormente, los apelantes presentaron una *Moción al Amparo de la Regla 45 de Procedimiento Civil para que se dicte Sentencia en Rebeldía*[7] en contra de la señora Carmen Colón Santiago, la cual fue declarada Ha Lugar por el

---

[2] Entrada Núm. 15 del SUMAC del TPI.
[3] Entrada Núm. 26 del SUMAC del TPI.
[4] Entrada Núm. 16 del SUMAC del TPI.
[5] Entrada Núm. 29 del SUMAC del TPI.
[6] Entrada Núm. 46 del SUMAC del TPI.
[7] Entrada Núm. 64 del SUMAC del TPI.

foro primario[8] y, el 5 de octubre de 2022, se dictó la correspondiente *Sentencia Parcial*[9], mediante la cual el TPI adjudicó responsabilidad exclusivamente contra dicha señora, condenándola al pago de la suma de $7,341.98 acumulados hasta la fecha del 11 de marzo de 2019, producto del incumplimiento con lo pactado, más los intereses y penalidades. Con relación a las alegaciones sobre daños y perjuicios el foro primario dispuso que se atenderían luego de celebrar una vista evidenciaria donde se pasara prueba sobre los alegados daños.

Así las cosas, el pleito continuó sólo contra el señor Colón Santiago toda vez que los apelantes y los codemandados, Oriental Bank (en sustitución de Scotiabank de Puerto Rico[10]) y Miguel Tsintas Colón, acordaron desistir del pleito con perjuicio.[11]

Más adelante, el apelado presentó una *Moción solicitando sentencia sumaria al amparo de la Regla 36 de las de Procedimiento Civil*[12], mediante la cual solicitó la desestimación de la reclamación en su contra al alegar que no fue parte del acuerdo contractual, que no tenía obligación para con los apelantes y que firmó el certificado de depósito porque de lo contrario no se podría realizar la transacción.

Luego de que los apelantes presentaran su *Oposición a Moción de Sentencia Sumaria promovida por el codemandado Noel Colón Santiago*[13], el 13 de noviembre de 2023 el TPI emitió una *Resolución*[14] en la que declaró No Ha Lugar la moción de sentencia sumaria presentada por el apelado. El foro primario determinó que existían controversias de hechos materiales —particularmente sobre su participación, intención o propósito— que no

---

[8] Entrada Núm. 49 del SUMAC del TPI.
[9] Entrada Núm. 79 del SUMAC del TPI.
[10] Entrada Núm. 24 del SUMAC del TPI.
[11] Entrada Núm. 72 del SUMAC del TPI.
[12] Entrada Núm. 92 del SUMAC del TPI.
[13] Entrada Núm. 100 del SUMAC del TPI.
[14] Entrada Núm. 102 del SUMAC del TPI.

podían ser adjudicadas por la vía sumaria, sino que debían atenderse en un juicio en su fondo.

Posteriormente, la parte apelante presentó una *Moción de Sentencia Sumaria promovida contra el codemandado Noel Colón Santiago*[15], alegando que los hechos adjudicados por el foro primario en la *Sentencia Parcial* en Rebeldía dictada contra Carmen Rosa Colón Santiago constituían cosa juzgada y que tales efectos debían extenderse a su hermano, el señor Colón Santiago. El apelado presentó su *Moción en Oposición a Sentencia Sumaria*[16] en la que reitero que no tuvo ninguna participación ni interés económico en el negocio realizado entre las partes y que, por tanto, no se le podía adjudicar responsabilidad por el mero hecho de haber firmado el certificado de depósito y haber retirado el dinero por instrucciones de su hermana.

Luego de examinar los planteamientos de las partes, el 3 de noviembre de 2025 el foro primario emitió una *Sentencia Parcial*[17] en la que estableció como hechos incontrovertidos de la primera *Sentencia Parcial* contra la señora Carmen Rosa Colón Santiago los siguientes:

> 1. Los demandantes, Ramón Álvarez Colón, María del Carmen Rivera Nazario y la Sociedad Legal de Gananciales compuesta por estos, tienen su dirección postal en RR-5 Apartado 9156 - Toa Alta, PR 00953, y su teléfono es 787-379 7571.
>
> 2. Se incluyó y acumuló en la demanda como demandados que alegadamente responden solidariamente por los hechos aseverados en la demanda a los siguientes codemandados, a saber; Scotiabank de PR, quien luego fue sustituido por el Oriental Bank, a tenor con la transacción de la compra de dicha entidad bancaria, según surge de la orden dictada previamente a esos efectos por el Tribunal. Además, a Miguel Tsintas Colón, demandado en su carácter personal, empleado y oficial del banco codemandado. A su vez, se acumuló al Sr. Noel Colón Santiago, casado con Mengana de Tal y a la Sociedad Legal de Gananciales compuesta por estos. Finalmente, se incluyó como codemandada a la Sra. Carmen Colón Santiago, quien debidamente emplazada no compareció oportunamente a defenderse de las alegaciones en su contra, por lo cual este Tribunal le anotó la rebeldía.
>
> 3. Los demandantes Ramón Álvarez Colón y María del Carmen Rivera Nazario, la codemandada Carmen Rosa Colón

---

[15] Entrada Núm. 124 del SUMAC del TPI.
[16] Entrada Núm. 126 del SUMAC del TPI.
[17] Entrada Núm. 128 del SUMAC del TPI.

Santiago, su hermano el codemandado Noel Colón Santiago y el Lic. Francisco J. Rivera Bujosa acudieron a la Sucursal de Scotiabank Ponce by Pass, en la cual el codemandado Miguel Tsintas Colón ocupa el puesto de gerente y le solicitaron un servicio bancario que fuera compatible con las necesidades de todos los allí comparecientes.

4. A estos efectos le indicaron que los esposos Álvarez-Rivera habían adquirido por compraventa la propiedad de Doña Carmen Rosa Colón Santiago. No obstante, surgía de los registros gubernamentales que con anterioridad al otorgamiento de la escritura de compraventa la referida propiedad tenía una alegada deuda contributiva en el CRIM por la cantidad de $33,250.00.

5. Por tal razón, las partes y el licenciado Francisco J. Rivera Bujosa, le explicaron que interesaban que el dinero adeudado al CRIM permaneciera depositado en algún tipo de instrumento disponible en el banco hasta tanto y en cuanto la vendedora, Sra. Carmen Rosa Colón, culminara el trámite sobre una reclamación de exoneración retroactiva ante el CRIM, y se saldara cualquier balance que pudiera quedar pendiente luego de dicho trámite. La señora Colón Santiago indicó que por un alegado error del abogado notario que autorizó la escritura mediante la cual ella adquirió la propiedad, éste no notificó la solicitud de exoneración al CRIM provocando la acumulación de una deuda improcedente.

6. El interés expresado por las partes era que el dinero permaneciera en el banco hasta tanto culminara la reclamación en el CRIM, y dicha entidad certificara la deuda real, si alguna, sobre la propiedad inmueble, para entonces proceder a pagar al CRIM directamente de los dineros depositados en el banco demandado. La Sra. Carmen Rosa Colón podría disponer de la diferencia resultante entre el pago de la deuda ante el CRIM, y el dinero depositado más los intereses acumulados en el instrumento adecuado, conforme la orientación y oferta del banco hecha a los clientes, para garantizar que el mismo fuese utilizado con ese propósito.

7. Con este propósito el codemandado Miguel Tsintas Colón asignó a la Sra. Letty Pérez, quien atendió los allí comparecientes y les explicó, en presencia del abogado notario, que el instrumento adecuado para servir los propósitos de las partes involucradas en la transacción era la creación de un certificado de depósito a nombre de todos, el cual sólo podría ser redimido una vez se cumplieran las condiciones suspensivas del acuerdo alcanzado por las partes, a saber, que la Sra. Carmen Rosa Colón culminara el proceso de su reclamación ante el CRIM, acreditando al banco el balance adeudado, si alguno, al CRIM en cuyo caso se prepararía un cheque del banco girado, con cargo al dinero depositado en el certificado de depósito, para pagar la deuda en el CRIM, y la Sra. Carmen Rosa dispondría del balance sobrante y los intereses acumulados por el instrumento.

8. El 30 de octubre de 2018, la parte demandante [tuvo] conocimiento en ese momento, que el dinero del certificado había sido retirado el 11 de enero de 2018 en una Sucursal del Scotiabank de Vega Baja, sin que concurrieran todos los

firmantes en el certificado de depósito y en contravención a lo que estipularon en el documento del certificado de depósito.

9. Inmediatamente y como resultado de la orientación e instrucción del codemandado actuando como agente del banco y en beneficio propio, los demandantes solicitaron una investigación de los hechos que dieron lugar al retiro del dinero.

10. La documentación relacionada a la presunta investigación reflejó que el mismo día que vencía el Certificado de Depósito y que se supone se renovara reinvirtiendo principal e intereses a la fecha del vencimiento, hasta que concurrieran todos al banco con el resultado de la reclamación en el CRIM y el balance adeudado, la señora Carmen Rosa Colón compareció y retiró el dinero en otra sucursal (Vega Baja) sin la presencia de los demandantes.

11. El CRIM determinó que la Sra. Carmen Rosa Colón adeuda un balance correspondiente al periodo de doce meses en que la señora Colón se mudó de su residencia principal para el estado de la Florida en EEUU, el cual no estaba cubierto por la exención contributiva de dicha entidad.

Asimismo, el TPI incluyó como nuevos hechos incontrovertidos los siguientes:

1. El Sr. Colón Santiago no participó en los convenios relacionados a la compraventa de la propiedad objeto de las notificaciones de deuda contributiva hechas por el CRIM.

2. El Sr. Colón Santiago no se benefició del dinero ni intereses producto de la cancelación del certificado de depósito.

3. El Sr. Colón Santiago no firmó la Declaración Jurada otorgada ante el Lcdo. Rivera Bujosa.

4. El Sr. Colón Santiago no estaba obligado a lo dispuesto en la Declaración Jurada que fue posterior a que comparecieran al banco a adquirir el certificado de depósito.

5. La Declaración Jurada instruye a que primero la Sra. Colón Santiago debía cancelar el certificado de depósito una vez le notificara el CRIM la deuda certificada, luego de ello tenía 15 días para pagar la deuda y luego notificárselo a la Parte Demandante.

6. La Sra. Colón Santiago aparece en el certificado de depósito como la titular principal.

7. No se puede establecer a ciencia cierta si el Sr. Colón Santiago estuvo presente cuando se firmó la Declaración Jurada porque no se menciona su nombre ni aparece su firma.

8. Sobre el hecho anterior, inferimos razonablemente que este no participó de las conversaciones al respecto y al menos sabemos que es más probable que se negara a firmarlo. Esta teoría del Sr. Colón Santiago fue expuesta en el Informe de

Conferencia con Antelación al Juicio y la conoce o debe conocer la Parte Demandante.

En su análisis, el foro primario concluyó que el señor Colón Santiago no tenía la obligación de cumplir con ninguno de los acuerdos logrados entre los otorgantes de la compraventa, relacionadas con la gestión de lograr una exoneración contributiva ni tampoco que se mantuviera el certificado de depósito vigente hasta el momento en que se certificara cual era la deuda del CRIM, si alguna. Añadió que en la *Sentencia Parcial* dictada contra Carmen Rosa Colón Santiago no se hicieron expresiones, en ningún concepto, relacionadas con el apelado y que, aunque los apelantes habían indicado que estarían apoyando su solicitud de sentencia sumaria con evidencia que demostraría que el señor Colón Santiago sí participó de las actuaciones para defraudarlos, según la apreciación del tribunal estos no lograron establecer que el apelado actuó en común acuerdo con su hermana para esos fines. En consecuencia, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria promovida contra el codemandado Noel Colón Santiago* presentada por los apelantes y desestimó la *Demanda* contra el señor Colón Santiago, al concluir que no existía vínculo contractual ni fundamento legal para imputarle responsabilidad por los hechos previamente adjudicados.

El 7 de noviembre de 2025 el foro primario emitió una *Sentencia Enmendada*[18] mediante la cual convirtió la *Sentencia Parcial* dictada el 3 de noviembre en una sentencia final y no parcial. Sin embargo, tras la presentación de una *Reconsideración a Orden del 6 de noviembre de 2025*[19] presentada por los apelantes, el foro primario corrigió dicha determinación, reconociendo que la sentencia no podía ser final, ya que subsistía la causa de acción contra Carmen Rosa Colón Santiago únicamente para la determinación de los daños.[20] A esos efectos, el 24 de noviembre de 2025, el

---

[18] Entrada Núm. 130 del SUMAC del TPI.
[19] Entrada Núm. 131 del SUMAC del TPI.
[20] Véase *Resolución* en la Entrada Núm. 135 del SUMAC del TPI.

TPI dejó sin efecto la sentencia final, emitió una *Sentencia Parcial Enmendada por Segunda* [sic][21], ordenó la reapertura del caso y señaló vista evidenciaria exclusivamente para atender los daños reclamados contra la parte en rebeldía.[22]

En cuanto a la *Reconsideración a Sentencia Enmendada*[23] presentada por los apelantes el 21 de noviembre de 2025, el TPI la declaró No Ha Lugar mediante *Resolución*[24] dictada el 24 de noviembre de 2025.

Inconforme con lo resuelto, el 20 de diciembre de 2025 los apelantes presentaron el recurso de epígrafe y plantean el siguiente y único error:

**ERRÓ EL TPI AL DESESTIMAR LA DEMANDA ADJUDICANDO LA MOCIÓN DE SENTENCIA SUMARIA PROMOVIDA POR LA PARTE DEMANDANTE EN CONTRA DE LA LEY DEL CASO Y DE LOS HECHOS ADJUDICADOS EN SENTENCIA PARCIAL Y RESOLUCIÓN, CAUSANDO UNA GRAVE INJUSTICIA EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY.**

El 20 de enero de 2026 el apelado presentó su *Oposición a Apelación.* Con el beneficio de la comparecencia de ambas partes, el derecho y la jurisprudencia aplicable, procedemos a resolver.

**II.**

**A. Estándar de revisión aplicable a sentencias sumarias**

Como sabemos, la sentencia sumaria es un mecanismo procesal provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, cuyo fin es proveer una solución justa, rápida y económica de los litigios. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). A tenor, dicho mecanismo procesal permite que un tribunal, disponga parcial o totalmente de litigios civiles en aquellos casos en los que no exista alguna controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita.

---

[21] Entrada Núm. 138 del SUMAC del TPI. Dicha determinación en el dictamen que se revisa en este recurso.
[22] Entrada Núm. 137 del SUMAC del TPI.
[23] Entrada Núm. 134 del SUMAC del TPI.
[24] Entrada Núm. 140 del SUMAC del TPI.

*León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020). La sentencia sumaria procede cuando "no existen controversias *reales* y *sustanciales* en cuanto a *los hechos materiales,* por lo que lo único que queda por parte del poder judicial es aplicar el Derecho". *Meléndez González et al. v. M. Cuebas, supra,* pág. 109, citando a *Oriental Bank v. Perapi et al.,* 192 DPR 7, (2014); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010).

Al interpretar la precitada Regla, el Tribunal Supremo ha expresado que debe dictarse sentencia sumariamente cuando el tribunal sentenciador tiene ante sí, de manera incontrovertible, la verdad sobre todos los hechos esenciales. *ELA v. Cole,* 164 DPR 608, 625 (2005). De manera que, "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria [...] cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se entiende que un hecho material es aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Por ello, no se deberá dictar sentencia sumaria cuando: 1) existen hechos materiales controvertidos; 2) hay alegaciones afirmativas en la demanda que no han sido refutadas; 3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o 4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra, supra,* pág. 757; *SLG Szendrey-Ramos v. Consejo Titulares,* 184 DPR 133, 167 (2011).

Al atender la moción de sentencia sumaria, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *ELA v. Cole, supra,* pág. 626. No obstante, "la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática". *Mun. de Añasco v. ASES,* 188 DPR

307, 327 (2013), citando a *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 556 (2011).

A su vez, corresponde al juzgador actuar guiado por la prudencia y ser consciente de que su determinación podría implicar que se prive a una de las partes de su "día en corte", elemento esencial del debido proceso de ley. *León Torres v. Rivera Lebrón, supra,* pág. 44. Cónsono con lo anterior, nuestro más Alto Foro ha resuelto que, existen litigios y controversias que "por su naturaleza no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que en tales casos un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas". *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001), citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 311 (1994); *García López v. Méndez García*, 88 DPR 363, 379 (1963). Dicho foro ha identificado como posibles controversias de este tipo aquellas que incluyen: "elementos subjetivos, es decir, aquellas en las que el factor credibilidad juegue un papel esencial o decisivo para llegar a la verdad, y donde un litigante dependa 'en gran parte de lo que extraiga del contrario en el curso de un juicio vivo'. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

Al evaluar una moción de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición del Tribunal de Primera Instancia. *Serrano Picón v. Multinational Life Ins.*, *supra*, pág. 993; *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Tómese en cuenta que nuestra revisión es una de *novo* y debemos basar nuestro análisis por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. A tenor, el Tribunal Supremo ha esbozado los criterios que deben guiar esta revisión. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, *supra*, págs. 118-119. Consecuentemente, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra;*

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos y;

4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al., supra*, pág. 679.

Ahora bien, estamos limitados en cuanto a: (1) que no podemos tomar en consideración evidencia que las partes no presentaron ante el foro primario, y (2) tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al tribunal de instancia luego de celebrado un juicio en su fondo. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. Al realizar nuestra revisión *de novo* debemos "examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Id.*

### B. La doctrina de la "ley del caso"

La doctrina de la ley del caso responde a la necesidad de darle finalidad a las adjudicaciones judiciales. *Rosso Descartes v. BGF*, 187 DPR 184, 192 (2012)(SENTENCIA). Su propósito es asegurar un trámite judicial ordenado y pronto de los litigios, al igual que promover la estabilidad y certeza del derecho. *Íd.*, pág. 193. De esta manera, las partes pueden orientar su actuación procesal conforme a determinaciones judiciales claras, confiables y certeras. *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 754 (1992).

En virtud de esta doctrina, la norma general dispone que las determinaciones y asuntos decididos y considerados por el foro primario o

por un tribunal apelativo no pueden reexaminarse. *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 9 (2016); *Rosso Descartes v. BGF, supra*. Estas determinaciones que constituyen la ley del caso son todas aquellas cuestiones finales consideradas y decididas por el Tribunal. *Cacho Pérez v. Hatton Gotay y otros, supra*. Es decir, **la aplicación de la doctrina procede, solamente, cuando exista una decisión final de la controversia en sus méritos.** *Cacho Pérez v. Hatton Gotay y otros, supra*. (Énfasis nuestro). Como consecuencia, las determinaciones así emitidas obligan tanto al tribunal inferior, como al propio foro que las dictó, impidiendo que los asuntos ya resueltos sean reexaminados. *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 606-607 (2000).

Ahora bien, la doctrina de la ley del caso no constituye un mandato invariable o inflexible. *Núñez Borges v. Pauneto Rivera, supra*; *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 30 (1971). Se trata de una sana práctica judicial dirigida a respetar como definitivas las controversias que han sido debidamente sometidas, litigadas y resueltas por un tribunal, mas no de una regla inviolable que deba aplicarse mecánicamente en toda circunstancia. *Núñez Borges v. Pauneto Rivera, supra*, pág. 755; *Torres Cruz v. Municipio de San Juan*, 103 DPR 217, 223 (1975); *Don Quixote Hotel v. Tribunal Superior, supra*.

Por ello, cuando la aplicación estricta de la ley del caso previamente establecida resulta errónea y conduce a una grave injusticia, el mismo foro sentenciador o un tribunal de jerarquía superior puede apartarse de dicha determinación y aplicar una norma jurídica distinta. *Mgmt. Adm. Servs. Corp. v. ELA, supra*, pág. 607. En ese sentido, el Tribunal Supremo ha reiterado que "[s]ólo cuando se presenta un atentado contra los principios básicos de la justicia, es que los tribunales pueden descartar la aplicabilidad de la doctrina de la ley del caso". *Cacho Pérez v. Hatton Gotay y otros, supra*, pág. 10.

Asimismo, una determinación judicial previamente emitida no debe ser alterada, salvo que del expediente surja una variación sustancial en los hechos del caso o un cambio en el estado de derecho aplicable. *Rosso Descartes v. BGF, supra*, págs. 192-193; *Mgmt. Adm. Servs. Corp. v. ELA, supra*, pág. 607. En consecuencia, aunque la doctrina de la ley del caso no es rígida ni de aplicación absoluta, descartarla solo resulta procedente cuando su observancia conduce a resultados manifiestamente injustos. *Mgmt. Adm. Servs. Corp. v. ELA, supra*, pág. 608.

Cónsono con lo anterior, se ha reconocido que un segundo juez de un foro primario puede modificar la determinación emitida por un primer juez dentro del mismo caso cuando dicha determinación produce resultados claramente injustos. *Núñez Borges v. Pauneto Rivera, supra*, pág. 755; *Torres Cruz v. Municipio de San Juan, supra*, pág. 221. De igual forma, nuestro Alto Foro ha resuelto que "en nuestra jurisdicción, un juez de instancia no queda atado por sus determinaciones interlocutorias, aun cuando éstas no hayan sido objeto de reconsideración o revisión." *Mgmt. Adm. Servs. Corp. v. ELA, supra*, págs. 608-609.

### C. Teoría general de los contratos

Bajo los principios que rigen nuestro ordenamiento, las obligaciones pueden surgir de la ley, de los contratos y cuasicontratos, así como de actos u omisiones ilícitas en las que medie culpa o negligencia. Art. 1042 del Código Civil de Puerto Rico de 1930[25], 31 LPRA sec. 2992. En particular, las obligaciones derivadas de un contrato poseen fuerza vinculante entre las partes y deben cumplirse conforme a lo acordado. Art. 1044 del Código Civil, 31 LPRA sec. 2994. Además, nuestro sistema jurídico reconoce el principio de la autonomía de la voluntad y libertad de contratación, lo que permite a

---

[25] A pesar de que el Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 5311 *et seq.*, según enmendado, para fines de este caso haremos referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

los contratantes fijar los pactos, condiciones y cláusulas que estimen convenientes, siempre que no contravengan la ley, la moral o el orden público. Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372; *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008). Asimismo, siempre que concurran los elementos esenciales para su validez, los contratos pueden celebrarse en cualquier forma, incluso verbalmente, y serán obligatorios. Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 3451; *VELCO v. Industrial Serv. Apparel*, 143 DPR 243, 250 (1997).

El contrato existe desde cuando una o varias personas consienten en obligarse frente a otra u otras a entregar una cosa o prestar un servicio. Art. 1206 del Código Civil de Puerto Rico, 31 LPRA sec. 3372. Para que exista un contrato válido deben concurrir tres elementos esenciales: el consentimiento de las partes, un objeto cierto que pueda ser materia del contrato y la causa de la obligación. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391. El consentimiento se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato. Art. 1214 del Código Civil de Puerto Rico, 31 LPRA sec. 3401.

Una vez constituido, ese convenio se convierte en la ley entre las partes, cosa que se traduce en el principio de *pacta sunt servanda*, o, en otras palabras, en que las partes están comprometidas a cumplir lo pactado. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012). A esos efectos, el Artículo 1044 del Código Civil, 31 LPRA sec. 2994, dispone que las obligaciones derivadas de un contrato poseen fuerza de ley entre las partes contratantes y deben ejecutarse conforme a lo pactado. No obstante, una vez el contrato queda perfeccionado, las partes quedan vinculadas no solo a lo expresamente acordado, sino también a todas aquellas consecuencias que, por la naturaleza del negocio, se ajusten a la buena fe, a los usos y a la ley. Art. 1210 del Código Civil de Puerto Rico, 31 LPRA sec. 3375. De ahí que el principio de obligatoriedad contractual esté íntimamente ligado al deber de buena fe.

*Unysis v. Ramallo Brothers*, 128 DPR 842, 852 (1991). Por ello, contravenir una obligación contractual puede conllevar el pago de alguna indemnización o quedar sujeto al cumplimiento específico de las cláusulas pactadas. Arts. 1054 y 1230 del Código Civil de Puerto Rico, 31 LPRA secs. 3018 y 3451; *PRFS v. Promoexport, supra.*

En cuanto a la interpretación de los contratos, el Artículo 1233 del Código Civil, 31 LPRA sec. 3471, dispone que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas." Así, cuando las condiciones contractuales son precisas y no dan margen a ambigüedades, deben aplicarse tal cual fueron redactadas. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006); *Unysis v. Ramallo Brothers, supra.*

Consistente con ello, en nuestra jurisdicción rige la teoría de la subjetividad en la interpretación contractual, que exige indagar cuál fue la verdadera voluntad de las partes para que esta prevalezca. *Macial v. Tomé*, 144 DPR 522, 537 (1997). La intención común de los contratantes constituye el criterio principal para determinar el alcance de las obligaciones. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983). Para identificarla, los tribunales deben considerar no solo los actos anteriores, contemporáneos y posteriores al contrato, sino también las circunstancias que revelen la voluntad de las partes. Art. 1234 del Código Civil, 31 LPRA sec. 3472; *Macial v. Tomé, supra*, págs. 537-538. Resulta igualmente relevante atender a quiénes son los contratantes, sus experiencias y conocimientos especializados sobre la materia objeto del contrato. *Unysis v. Ramallo Brothers, supra*, pág. 853. La interpretación final debe ajustarse al principio de buena fe y evitar resultados injustos, absurdos o contrarios a la naturaleza del acuerdo. *Guadalupe Solís v. González Durieux*, 172 DPR 676, 684-685 (2007).

Finalmente, cuando una de las partes incumple las obligaciones asumidas en un contrato, la parte perjudicada puede presentar una acción por incumplimiento contractual. Art. 1054 del Código Civil de Puerto Rico, *supra*; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 998 (2024). A través de esta acción *ex contractu*, podrá reclamar los daños que resulten del quebrantamiento de los deberes pactados. *Cruz, López v. Casa Bella y otros, supra.* No obstante, para que proceda, debe existir un acuerdo que haya generado una obligación y una expectativa razonable en las partes, así como un nexo causal entre el incumplimiento y el daño alegado. *Id.*, págs. 998-999.

**III.**

Los apelantes sostienen que el TPI erró al desestimar la demanda contra el señor Colón Santiago, por entender que ello contravino la doctrina de la ley del caso y los hechos adjudicados previamente. No les asiste la razón.

Como punto de partida, es menester recordar que la *Sentencia Parcial* en rebeldía dictada contra la señora Carmen Rosa Colón Santiago se emitió exclusivamente respecto a dicha parte, como consecuencia de su incomparecencia, y tuvo el efecto procesal de tener por admitidas las alegaciones bien formuladas de la demanda únicamente en su contra. De dicha sentencia no surgió determinación alguna —expresa ni implícita— sobre la conducta, responsabilidad o participación del señor Colón Santiago. Por consiguiente, esa adjudicación no resolvió, en los méritos, controversia alguna relativa al apelado.

Aun si se entendiera que algunos de los hechos recogidos en la sentencia de 2022 guardan relación con el apelado —en particular, su comparecencia al banco para la apertura del certificado de depósito o su participación en el retiro del dinero, aspectos que el propio señor Colón Santiago ha reconocido— ello no es suficiente, por sí solo, para establecer una fuente de obligación frente a los apelantes. Conforme a la teoría general de los contratos, la responsabilidad contractual requiere la existencia de un

vínculo obligacional entre las partes; esto es, evidencia de consentimiento y de un acuerdo que genere deberes exigibles. Arts. 1206, 1213 y 1214 del Código Civil de Puerto Rico, *supra*.

Examinado el expediente, coincidimos con la apreciación del foro primario de que los apelantes no lograron demostrar que entre ellos y el apelado surgiera una obligación contractual cuyo incumplimiento pueda reclamarse. En ausencia de prueba que establezca ese vínculo, no procedía imputarle responsabilidad por el mero hecho de haber firmado el instrumento o haber actuado por instrucciones de su hermana.

Por consiguiente, al no mediar error que justifique nuestra intervención, procede *confirmar* la *Sentencia Enmendada* […] dictada el 24 de noviembre de 2025.

## IV.

Por los fundamentos que anteceden, se *confirma* el dictamen apelado. Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones